230 A.2d 420.

JOHN T. HOPF *et al. vs.* BOARD OF REVIEW OF THE CITY OF NEWPORT.

MAY 31, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

276

PAOLINO, J. This is a petition for a writ of certiorari to review a decision of the respondent board entered on January 24, 1966, granting an application for a special exception to erect an extension to an existing medical office building which had been constructed under a prior special exception granted in April 1959. Pursuant to the writ, the board certified the pertinent records to this court.

This case has a long history which must be told in some detail in order to present the issues in their proper perspective. The cause was originally heard by this court on No-

vember 9, 1966, on briefs and oral argument. On December 12, 1966, with Mr. Justice Joslin concurring, the court filed an opinion rejecting petitioners' appeal.

On December 21, 1966, petitioners' counsel filed a motion for leave to reargue and his reasons in support thereof. He diligently and accurately pointed out that the basic premise on which we relied was factually inaccurate. It appears that by some inadvertence—and through no fault of the parties—the record which was before the court at the prior hearing and upon which we relied was not complete. In the circumstances, we recalled and withdrew our prior opinion and, in the interest of fairness and justice, we unanimously granted petitioners' motion for leave to reargue. Thereafter, the parties filed additional briefs and on February 8, 1967 we reheard the case on briefs and oral arguments. We have before us now the complete record, which discloses the following pertinent facts.

Aquidneck, Inc., a Rhode Island corporation, owns the real estate involved in this proceeding. It leases the premises to Aquidneck Medical Associates, a group of physicians combined in the joint practice of medicine and who operate under the name of Aquidneck Medical Center. The land, approximately 61,248 square feet in area, is designated as lot 193 on tax assessor's plat 29 and is located on Memorial Boulevard in a residential use district designated as an R 10 district by sec. 78-7 of the Newport zoning ordinance, and is so indicated on the zoning map.

Under sec. 78-7 an office building is a permitted use in R 10 districts as a special exception when authorized by the board of review pursuant to the powers vested in the board by sec. 78-12. The pertinent provisions of sec. 78-7 provide that in R 10 districts:

> "The following uses may be allowed but only when authorized by the Board of Review as Special Exceptions:
> "* * *

"(3) Office buildings * * * for professional offices limited to four stories or 45' in height."

During the hearing of the instant application, which was filed on November 4, 1965, the parties stipulated that the transcript and record of the 1959 hearing before the board would become part of the record in the present proceeding, including the original building plans submitted with the prior application.

In March 1959 Aquidneck filed an application requesting a special exception for lot 193 under the same section of a previous ordinance superseded by the present ordinance which became effective on January 2, 1963. It sought such exception under what is now sec. 78-7 to permit the use of its land "To construct and operate an office building to house professional offices to be used and occupied by duly licensed physicians in the practice of their profession, either individually or jointly, in the form of a partnership and/or association." The application expressly stated that the special exception requested applied to all of lot 193, but, of course, as appears from the record, the proposed building occupies only a portion of the land, the remainder being used for a parking area and driveways.

Additionally, the application states the reasons on which Aquidneck based its request for relief. It appears from the transcript of the 1959 hearing that, except for Aquidneck's counsel, no one appeared for or against the application. On April 21, 1959, the board rendered a decision granting the application and stating the reasons for its action. No appeal having been taken therefrom, Aquidneck constructed the building substantially in accordance with the plans originally presented to the board. It now proposes to enlarge that building.

On November 4, 1965, Aquidneck commenced the instant proceedings by filing an application for a special exception under sec. 78-7, " * * * applying to the property located at Memorial Boulevard and designated as Lot No. 193 on

Plat No. 29 of the Tax Assessor's Plats as presently constituted." It seeks permission

> "* * * to erect an extension to its office building presently located on said Lot 193 to house professional offices to be used and occupied by duly licensed practitioners in the practice of their profession, either individually or jointly, in the form of a partnership and/or association."

The application alleges that "* * * such exception would serve substantially public convenience and welfare, and that the appropriate use of neighboring property will not be substantially or permanently injured."

On the first day of the hearing, November 22, 1965, petitioners' counsel made a motion to dismiss the petition on the ground that the board did not have jurisdiction to grant successive exceptions under the same section of the zoning ordinance applying to the same land. He based his motion on our decision in *Bernstein* v. *Zoning Board of Review*, 99 R. I. 494, 209 A.2d 52. The board thereupon continued the hearing to December 6, 1965, to give counsel for the parties an opportunity to prepare and submit written memoranda of law on the issue. On the latter date, after considering the opposing contentions, the board denied the motion to dismiss and proceeded to hear the application on the merits.

The witnesses presented by Aquidneck were Dr. Anthony Caputi, president of Aquidneck, Inc., Howard E. Lawton, manager of Aquidneck Medical Associates, two real estate experts, and James M. Tilley, the building inspector of the city of Newport.

Doctor Caputi and Mr. Lawton testified as to the proposed use of the new addition, which would have approximately 20 rooms, 12 of which would be examining rooms and six, consultation rooms. They stated that they presently had eight member doctors and that they intended to add two more doctors, but that the present facilities were

not large enough to accommodate the additional doctors. Doctor Caputi testified that the present facility was overtaxed and that the proposed extension would enable them to better serve their patients. They both testified that there would be no appreciable increase in the number of patients visiting the center at any one time because the hours of the doctors would be staggered. Mr. Lawton stated that the peak hours of patient traffic did not conflict with the peak hours of vehicular traffic on Memorial Boulevard.

Aquidneck's real estate experts testified as to the effect of the proposed extension on the neighboring properties. After citing recent sales, they testified that in their opinion the proposed extension would not adversely affect the value of properties in the neighborhood and would not be detrimental to the neighborhood nor alter the essential character of the immediate area. It appears from the transcript that lot 193 is bounded on the west by the Chapel Terrace housing unit for the elderly and on the north and east principally by residential housing.

The building inspector testified that he examined the plans, which met the minimum provisions of the fire code. As we have previously stated, the record of the 1959 hearing is part of the instant record by agreement of the parties.

After Aquidneck concluded the presentation of evidence in support of its application, petitioners' counsel renewed his motion to dismiss on the same jurisdictional grounds previously raised. After hearing arguments of counsel the board denied the motion and proceeded to hear the evidence presented by the remonstrants.

Mr. John T. Hopf, one of the remonstrants, appeared and testified before the board. It appears from the transcript that his testimony related principally to the present operation of the medical center and to why it had been detrimental to the general character of the neighborhood and in particular to the use of his single-family residence which

abuts on the northern boundary of lot 193. His counsel has succinctly summarized Mr. Hopf's testimony in the brief as follows:

"* * * He described the unsightliness and heavy use of the Medical Center parking lot; the nuisance created by the smoke coming from the Medical Center's incinerator; to [sic] the use of a pharmacy located at the Medical Center as a retail drug store open to the public; the fact that the Medical Center was used as a Newport Police Department Command Post during the Newport Jazz Festival; and to the fact that the presence of the Medical Center had caused a serious storm and sewer drainage problem to Mr. Hopf and to the general neighborhood."

The remonstrants also called John Howieson, chief engineer of the city of Newport. He testified as to the storm and sanitary sewer drainage problem in the neighborhood, but stated that it was not peculiar to the area of the medical center and had existed for some thirty-six years. The board restricted his testimony, with relation to this problem, to the effects of the proposed addition on property in the surrounding area.

The evidence in the transcript also disclosed that a surface water problem resulted from the alleged change in the topography of Aquidneck's property and that Mr. Hopf had instituted legal proceedings to recover damages which he claims he suffered therefrom.

The remonstrants also offered the testimony of a real estate expert, who testified that the proposed extension would depreciate the value of surrounding properties. His testimony was in direct conflict with that of Aquidneck's real estate experts.

On January 24, 1966, the board rendered a decision granting Aquidneck's application subject to the following conditions:

"(1) screening consisting of evergreen trees be placed on the Aquidneck Medical Center Property along

the north boundary line, not closer than six (6)
feet from the boundary line with a minimum
height of six (6) feet;

"(2)  that there be no burning of any materials or drugs
that would create an obnoxious odor;

"(3)  the use of the parking lot be restricted to patients
and personnel of the Aquidneck Medical Center
and precautions be taken to effectively lock the
lot for any other purpose."

In their original brief, petitioners relied on our decision
in *Bernstein, supra,* to support their motions to dismiss.
They now concede the board's power to grant the requested
relief in a proper case, but argue that the board's action
is not supported by the evidence in this case. In their sup-
plemental brief they state, and we believe correctly, that
*Bernstein* stands only for the rule that once an uncondi-
tional use is granted by special exception to a particular
tract of land, a local board is without jurisdiction to grant
another exception for a use of the same character. The rea-
son for this rule is obvious—if land is advantaged with an
unconditional use of a particular character resulting from a
prior grant, the landowner is not required to seek another
special exception for a use of the same character; he has
the right to such use, subject only to other provisions of
the ordinance and the building code.

The petitioners agree that there is no prohibition against
successive applications for special exceptions relative to the
same premises for which prior exception have been granted.
However, they argue that in determining whether an appli-
cant is entitled to relief we should adopt the doctrine enun-
ciated in: *Day* v. *Zoning Board of Review,* 92 R. I. 136;
*Churchill* v. *Zoning Board of Review,* 98 R. I. 302, 201 A.2d
480; and *Marks* v. *Zoning Board of Review,* 98 R. I. 405,
203 A.2d 761. Those cases deal with (1) the jurisdiction
of zoning boards to hear successive applications relative to
the same premises and (2) with their authority to reverse
prior final decisions. The doctrine stated in those cases

is summarized in *Marks, supra,* 98 R. I. at 405, 203 A.2d at 762, in the following words:

"* * * a zoning board, on a subsequent application brought by the same applicant for substantially similar relief, is without power to reverse its prior decision in the absence of a material change in circumstances intervening between the two decisions."

Those cases involve subsequent applications seeking reversals of prior decisions which had expressly denied relief in the first instance. That is not the factual situation in the case at bar.

We shall proceed to examine the premise on which petitioners base their argument. They claim that the 1959 grant was conditioned upon the plans submitted and approved by the board; they concede the board's authority to alter the conditions allegedly imposed in the prior grant, but they argue that the board's power should not be exercised unless there has been a substantial or material change in the circumstances intervening between the two decisions. The petitioners frankly admit that land should not be burdened forever with the conditions originally imposed because the essential characteristics of an area often change. They argue, on the other hand, that the surrounding landowners should be confident that the conditions imposed will remain in effect until there has been a proven substantial change in the character of the neighborhood.

The real question raised by petitioners' argument is whether the board's authority to grant Aquidneck's present application depends only upon the latter's compliance with all of the requirements prescribed in the ordinance as conditions precedent to the requested relief or whether, in addition thereto, Aquidneck must show that there has been a material or substantial change in circumstances since the earlier grant. The issue is clear, but the solution poses problems.

If we accepted petitioners' theory that Aquidneck is seek-

ing the removal, elimination or modification of a condition imposed by the board in 1959 as part of the relief granted, there would be merit in their contention that a change in circumstances must be shown. See 2 Rathkopf, Zoning and Planning, chap. 46 (3d ed.). In G. L. 1956, §45-24-13, the enabling act provides that local legislative bodies " * * * shall provide that said board of review may, in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance * * *." The relief granted in 1959 was a special exception pursuant to the provisions of sec. 78-7 to erect the office building described in the submitted plan on lot 193. This was the very relief sought by Aquidneck; it was not a condition within the meaning of the phrase "* * * subject to appropriate conditions and safeguards * * *" in §45-24-13. Indeed, the 1959 decision contains no express condition. Whether conditions should be attached to an exception is a matter which rests in the discretion of the board. *Richardson* v. *Zoning Board of Review*, 101 R. I. 194, 221 A.2d 460. On the record before it the board was satisfied that all conditions precedent had been met and accordingly granted Aquidneck's application to erect the proposed office building.

Pursuant to such grant, Aquidneck erected the building. It does not now seek the elimination or modification of any prior condition. Nor is it asking for identical relief; on the contrary, it is requesting permission for something entirely different, namely, an extension and enlargement of its present facilities. We are not, therefore, faced with a res adjudicata problem. Since Aquidneck is not seeking a reversal of a prior decision, as was the situation in *Day, Churchill*, and *Marks*, all *supra*, we do not believe the doctrine of administrative finality should apply. As the court said in *Day*, at page 140, in reference to the application of that doctrine, " * * * the relief sought by each application

must be the same." Finally, on this record, we find no basis for the application of any estoppel.

The question presented for our determination is one of first impression in this state. The parties have called no case to our attention nor have we been able to find any as a result of our own research involving the precise issue before us. While we acknowledge the force of petitioners' arguments, we are not convinced by them. It is our opinion that in a case such as this, neither reason nor justice requires that a property owner be burdened with the duty of establishing a material or substantial change in circumstances.

We hold that the board has the power to grant Aquidneck's application provided Aquidneck satisfies the board by competent evidence that it has met all the requirements prescribed in the ordinance as conditions precedent for the relief it seeks. *Melucci* v. *Zoning Board of Review*, 101 R. I. 649, 226 A.2d 416. On that issue the burden is on Aquidneck. *Klowan* v. *Zoning Board of Review*, 99 R. I. 252, 207 A.2d 42.

Before considering the question whether Aquidneck has satisfied the burden of establishing compliance with the ordinance provisions, we shall discuss briefly petitioners' contentions that the hearing conducted by the board was not a full and impartial hearing and that the commission committed prejudicial error in excluding certain testimony.

The petitioners were undoubtedly entitled to a fair and impartial hearing, but, as we have held in a long line of cases, zoning boards of review are not required to observe strictly either the rules of evidence or the formality that apply ordinarily in judicial proceedings. *Tuite* v. *Zoning Board of Review*, 96 R. I. 307; *Zimarino* v. *Zoning Board of Review*, 95 R. I. 383; *Lumb* v. *Zoning Board of Review*, 91 R. I. 498. In discussing the latitude allowed to these boards, the court said in *Lumb, supra,* at page 502:

"* * * This latitude is limited, however, by a fundamental requirement that such hearings be basically fair and impartial, and in the course thereof such boards may not refuse arbitrarily to receive and consider material evidence on the issues being tried."

An examination of the transcript reveals that the members of the board were familiar with the area and that they were concerned with the effect of the proposed addition on the surrounding area. The board indicated that it was thoroughly cognizant of the nature of the petitioners' objections and, indeed, imposed certain conditions and safeguards calculated to meet such objections. It expressly stated that it would hear evidence relating to conditions resulting from the grant of the 1959 exception if petitioners presented such evidence through competent witnesses. Additionally the board stated that if remonstrants could show that the proposed addition would affect the area in any way, it would hear such evidence.

After considering the challenged evidentiary rulings in the context of the entire record, we find no prejudicial error. We are satisfied from a reading of the transcript that the board conducted a full, fair and impartial hearing, and that it did not refuse arbitrarily to receive and consider material evidence.

We inquire next whether Aquidneck has presented competent evidence to meet the conditions precedent to its entitlement to the relief requested. The parties agree that under the ordinance a special exception can only be granted if it is reasonably necessary for the convenience and welfare of the public and if the appropriate use of neighboring property will not be substantially injured. Section 78-12 (C) (3), which defines the powers of the board, reads as follows:

"All determinations of the Board shall be made in accordance with the comprehensive plan specified in Title 45-24-3 of the General Laws of 1956 and in harmony with the purpose and intent of said law and of this

ordinance as expressed in Section 1 thereof.

"In addition to this general rule of guidance and to particular requirements specified in this ordinance, no permit for a special exception shall be issued unless the Board finds that the proposed buildings or the proposed use of land:

(a) will not create or aggravate a traffic or fire hazard;

(b) will not block or hamper the city pattern of circulation;

(c) will not tend to depreciate the value of property in the neighborhood or be otherwise detrimental to the neighborhood or its residents or alter the neighborhood's essential characteristics."

Aquidneck presented competent evidence which, if believed and relied upon, would meet the tests set forth in the ordinance. With respect to the question whether there is any competent evidence in the record tending to establish that the proposed addition would substantially serve the public convenience and welfare, as required by sec. 78.1 of the ordinance, we need only refer to the *undisputed testimony* of Dr. Caputi who, in addition to saying that the proposed addition would better enable the associates to serve their patients, also testified that:

"* * * There are now a certain number of patients who have to go to metropolitan areas to seek consultative service not now available in this area. We would use trained specialists to take care of this need."

It is reasonable to infer from such testimony that the consultative medical services to which he referred are not now available to the people in this area, and that an expanded service which will make it possible for the sick or disabled to obtain such services locally rather than in the metropolitan areas, permits the factual situation here to meet the standard of public convenience and welfare. Such a factual situation goes beyond that in *Melucci* v. *Zoning Board of Review*, 101 R. I. 649, 226 A.2d 416, and *Zawirski* v. *Zoning Board of Review*, 96 R. I. 110, where all that

was shown was that the proposed use would accommodate the applicant or enhance the scope of his service to his patrons.

Doctor Caputi's testimony that they would use specialists to take care of consultative services not then available meets the standard prescribed in sec. 78.1 that the proposed use promote " * * * the public health, safety, comfort, convenience and general welfare * * *" and would support findings that the proposed extension would " * * * substantially serve the interests of the *general public* as well as the residents of the immediate neighborhood * * *." (italics supplied) *Nutini* v. *Zoning Board of Review*, 78 R. I. 421, 424. See also *Preston* v. *Zoning Board of Review*, 92 R. I. 463, and *Fratantuono* v. *Zoning Board of Review*, 90 R. I. 449.

However, the evidence on some of the other issues is conflicting. Since the board has failed to make any findings of fact or to state the reasons for its decision or the ground or grounds upon which the decision rests, we are not able to review the board's exercise of discretion in order to determine, in accordance with our duty under the act, whether it abused its discretion or acted arbitrarily in the circumstances.

We have repeatedly held that zoning boards should make express findings of fact and should pinpoint the specific evidence upon which they base such findings. Additionally they should disclose the reasons upon which they base their ultimate decision because the parties and this court are entitled to know the reasons for the board's decision in order to avoid speculation, doubt, and unnecessary delay. *Bastedo* v. *Board of Review*, 89 R. I. 420; *Coffin* v. *Zoning Board of Review*, 81 R. I. 112; *Winters* v. *Zoning Board of Review*, 80 R. I. 275; *Petrarca* v. *Zoning Board of Review*, 78 R. I. 130. In these cases the court cautioned that unless zoning boards comply with the above-mentioned directions

they run the risk of reversal if this court is unable to find from the record that there were good and sufficient grounds for their decisions.

The court in *Bastedo, Coffin, Winters,* and *Petrarca,* searched the record itself to determine whether there was evidence therein to support the board's decision. But the court was careful to point out in each of those cases that the evidence was undisputed and the facts uncontradicted and, therefore, it differentiated those cases from cases where the facts are controverted.

There are two lines of cases involving situations where, with respect to the prerequisite findings, the evidence is conflicting. In the first we have held that where a zoning board has granted affirmative relief there is implicit in the board's decision a determination that the prerequisite facts exist. See *Travers* v. *Zoning Board of Review,* 101 R. I. 510, 225 A.2d 222, *Fitzgerald* v. *Board of Review,* 99 R. I. 221, 206 A.2d 635, and *Cugini* v. *Chiaradio,* 96 R. I. 120.

In the second line of cases, in order to avoid speculation, we held that a decision granting or denying relief which fails (1) to give the reasons and the ground or grounds upon which it is predicated and (2) to point out the evidence on which the ultimate finding or findings are based will be returned to the board for completion and clarification. *Bilodeau* v. *Zoning Board of Review,* 101 R. I. 73, 220 A.2d 224; *Heroux* v. *Zoning Board of Review,* 82 R. I. 237; *Buckminster* v. *Zoning Board of Review,* 68 R. I. 515; *Berg* v. *Zoning Board of Review,* 64 R. I. 290. We believe the rule stated in the latter cases is the better rule because it requires strict compliance by zoning boards with §45-24-20, which, in pertinent part, provides that:

> "* * * The return shall concisely set forth such other facts as may be pertinent and material to show the grounds of the decision appealed from * * *."

We apply this rule to the case at bar and, in the future, to all cases where the evidence is in conflict. If zoning

290

boards perform their duty in accordance with the mandate of the enabling act and the decisions of this court, their decisions will be of great assistance to the parties and to this court. Such compliance will avoid unnecessary delay and inconvenience to all concerned.

On this record we find no error in the board's denial of petitioners' motion to dismiss, but for the reasons stated we remand the case to the respondent board.

The records certified to this court are remanded to the board for the purpose of enabling the board to complete and clarify its decision in accordance with this opinion.

*Corcoran, Peckham & Hayes, William W. Corcoran,* for petitioners.

*John F. Phelan,* City Solicitor, *Moore, Virgadamo, Boyle & Lynch, Jeremiah C. Lynch, Jr.,* for respondent.