Alfred E. TILLINGHAST et al.

v.

TOWN OF GLOCESTER.

No. 81–226–M.P.

Supreme Court of Rhode Island.

March 2, 1983.

Milton Stanzler, Abedon, Michaelson, Stanzler, Biener, Skolnik & Lipsey, Providence, for petitioners.

Robert G. Flanders, Jr., Town Sol., for respondent.

OPINION

KELLEHER, Justice.

We have, at the instance of Alfred E. Tillinghast and his wife Anna M. (the Tillinghasts), issued the common-law writ of certiorari to review the action of the Glocester town council (council) when it refused to renew the Tillinghasts' campground license. We have also stayed the effect of the refusal and allowed the campground to operate pending our resolution of this controversy. Before reviewing the records certified to us to determine the propriety of the council's action, we shall first detail some of the factual background that gave rise to this litigation.

The Tillinghasts began operating the Bowdish Lake Campgrounds sometime in the early 1970s. In May of 1978 the council adopted a Camping and Travel Trailer Park Ordinance which, in part, provided for the annual licensing of campgrounds such as the one owned by the Tillinghasts. In June of 1978, the town, through its solicitor, instituted a Superior Court civil action in which it claimed that the Tillinghasts had violated several portions of the newly enacted ordinance.[1] Despite this action, the town issued at least two licenses to the Tillinghasts. One was for the period expiring on December 31, 1978, and the other covered the year 1980. Although the 1980 license was not to expire until the end of the year, on April 11 the Tillinghasts received a letter from the town clerk informing them that the 1980 license was "invalid, null and void." No further action appears to have been taken regarding this purported revocation, and the Tillinghasts once again applied for renewal of their campground license in December 1980 for the year 1981.

---

1. Although this case remains open in Superior Court, no activity has been docketed since May of 1981. It appears that this litigation came to a rest at the discovery stage. Earlier, the town had instituted a civil action against the Tillinghasts in which it claimed that their operation of a bathing beach at the campground violated the town zoning ordinance. In its complaint the town sought both injunctive relief and the imposition of a daily fine of $100 for each day the bathing beach was in operation. In *Town of Glocester v. Tillinghast,* R.I., 416 A.2d 1178 (1980), we rejected the town's appeal from the trial justice's refusal to impose fines. We agreed with the trial justice that the sole relief available to a municipality pursuant to the provisions of G.L. 1956 (1980 Reenactment) §§ 45–24–6 and –7 is injunctive relief.

It was not until March of 1981 that the town decided to act on this application. Mrs. Tillinghast claims that the town clerk called her on March 13, 1981, to notify her that the camping area was to be inspected the following day to determine the extent of any winter damage to the campground's electrical system. She maintained that she informed the clerk that it would not be possible to open the campground on such short notice and asked for a new date. At this time, the clerk advised her that the council would consider the renewal request at its March 19, 1981 meeting. There is no other evidence in the record indicating that the Tillinghasts received notice of this hearing from any other source. Apparently, this brief conversation with the town clerk conveyed all the Tillinghasts were to know regarding what was to take place on March 19.

Mrs. Tillinghast and her attorney attended the council meeting at which the license renewal was considered. Their attendance proved futile because the council voted to "deny renewal" of the license. The Tillinghasts now seek relief from this denial, citing numerous grounds for overturning the council's action. We find it necessary only to address their due-process claim, in which they contend that the town council acted arbitrarily and capriciously in refusing to renew their license.

█ In order to accomplish this task, we must review the record of the proceedings in question. In this case, no transcript has been supplied to aid our analysis. Although the court has suggested that a verbatim transcript of what occurred is preferable, *DiDonato v. Zoning Board of Review of Johnston,* 104 R.I. 158, 242 A.2d 416 (1968), the failure to furnish such a record is not necessarily fatal on appeal. However, we have repeatedly stressed that a municipal agency, such as a zoning board or a legislative body, must in its decision set forth findings of fact and reasons for the action taken when acting in a quasi-judicial capacity. *Sambo's of Rhode Island, Inc. v. McCanna,* R.I., 431 A.2d 1192 (1981); *DiIor-*

*io v. Zoning Board of Review of East Providence,* 105 R.I. 357, 252 A.2d 350 (1969); *Hopf v. Zoning Board of Review of Newport,* 102 R.I. 275, 230 A.2d 420 (1967).

The purposes of this requirement were clearly expressed in *Hooper v. Goldstein,* 104 R.I. 32, 241 A.2d 809 (1968). The court, in quoting 2 Davis, *Administrative Law Treatise,* § 16.05 at 444 (1958), stated:

"The reasons have to do with facilitating judicial review, avoiding judicial usurpation of administrative functions, assuring more careful administrative consideration, helping parties plan their cases for rehearings and judicial review, and keeping agencies within their jurisdiction." *Hooper,* 104 R.I. at 44, 241 A.2d at 815.

The importance of a sufficient record is especially apparent in this case, in which the Tillinghasts allege a due-process violation. In examining the papers certified to this court by the town clerk, we are of the opinion that the facts they present are sufficiently incomplete that adequate review of the issues in question here is impossible. The record, which is a summary by the town clerk of what took place, indicates that when the matter of the renewal of the Tillinghasts' license "was aired," counsel for both the Tillinghasts and the town informed the council that matters concerning certain conditions relative to the operation of the campground were in litigation. In addition objections to the renewal had been made by several "surrounding cottage owners." Two letters were read, one from the zoning inspector and one from the zoning board of review. In giving the reasons for rejecting the license renewal, however, the record simply states:

"VOTED to deny renewal of said license for the following reasons:

1. Non-compliance with zoning safeguards and conditions, and

2. Failure to cooperate with Town officials."

In this March 19 summary, the council failed to state the evidence upon which it based its findings. Perhaps realizing its

error, the council met again on March 26, 1981, and adopted a statement of facts justifying its earlier decision. It is important to note that the Tillinghasts were not present at the March 26 meeting, and they contend that they never received notice that there was to be such a meeting. They insist that the evidentiary explication adopted by the council includes facts not brought out at the March 19 council session at which they were present. The Tillinghasts claim that this action, along with the failure of the council to inform them of the nature of the charges to be raised at the March 19 meeting, effectively denied them a meaningful hearing in accordance with the requirements of due process.

■ The town contends that the Tillinghasts received a fair hearing and that no due-process violations occurred. As previously noted, the meagerness of the record precludes an intelligent determination of such an issue. We must, however, address the town's further argument that the Tillinghasts were not entitled to notice and a hearing prior to the denial of their license-renewal application.

The town seeks to draw a distinction between a refusal to renew a license and the revocation of a license that has already been issued. It indicates that neither the enabling act that allows the regulation of campgrounds in Glocester (P.L.1978, ch. 70) nor the Glocester campground ordinance refers to the requirements of notice and hearing prior to the refusal to renew a license. Both do, however, provide such protective measures to one whose license is being suspended or revoked. Since the Tillinghasts sought to renew their license, the town argues, there was no need to comport with the requirements of notice and a hearing. Such an argument misses the mark because the distinctions now being pressed by the town, when considered in light of the guarantees of due process, amount to a distinction without a difference.

A more reasonable distinction exists between the refusal to grant a new license and the rejection of a renewal application.

In *Anderson v. Utah County Board of County Commissioners,* 589 P.2d 1214 (Utah 1979), the Utah Supreme Court clearly articulated the reasons why the owner of an ongoing business must be afforded due-process protections. In holding that the defendant could not refuse to renew the plaintiff's beer license without adequate justification, the court stated:

"[T]he administrative body * * * should not have the same breadth of discretion in refusing the renewal of the license of an operating business as it would in passing on an application for the establishment of a new business. The reasonableness and justice of such a rule is apparent when one reflects on the practicalities of the situation where the business has been established and operating for some years and thus represents a substantial commitment in the time, effort and expense by the owner." *Id.* at 1216.

Refusing to renew a license has similar effects on a going business as the revocation of a license. When one makes an investment in a business, as the Tillinghasts have, one expects to be able to continue to operate it. To deny this privilege arbitrarily would work an injustice upon the business owner.

Similar reasoning has been expressed by other courts in discussing rejected license-renewal applications. In *Trumbell Division, Owens-Corning Fiberglass Corp. v. City of Minneapolis,* 445 F.Supp. 911 (D.Minn.1978), the court held that an asphalt manufacturer possessed a legitimate property interest in the renewal of a license to carry on its business. In discussing the particular due-process safeguards appropriate to the case, the court stated:

"[W]here a licensee has run its business for a number of years and the business is one that cannot be readily moved or modified, the difference between a refusal to renew a license and a revocation is slight * * *." *Id.* at 917 n. 4.

■ There is little, if any, doubt in this case that the Tillinghasts' property interest

in their business and its continuation entitles them to the benefits of due process. The rights of a licensee are generally protected by due process. *See Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Millett v. Hoisting Engineers' Licensing Division,* 119 R.I. 285, 377 A.2d 229 (1977).

■ Having established the existence of the Tillinghasts' due-process right, we must next determine its scope. The dictates of due process in the area of administrative decisions were expressed in *Millett* as follows:

"It is well established that due process within administrative procedures requires the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 296, 377 A.2d at 235–36.

The Tillinghasts claim that the notice the clerk gave them of the March 19 hearing was totally inadequate. Though informed that it was to occur on the specified day, they claim that they should have been informed of the charges that were to be leveled against them at that meeting. Admittedly, the exact dimensions of the due-process guarantee may vary from case to case, but the Supreme Court has said that the purpose of notice under the due-process clause is to apprise the affected individual of, and permit adequate preparation for, an impending hearing. *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). Since continuous possession of the license may be vital to an individual's livelihood, it seems only fair that we subscribe to the sentiments expressed in *Konstantopoulos v. Town of Whately,* —— Mass. ——, 424 N.E.2d 210 (1981), where the court ruled that a municipality should notify a licensee "with reasonable particularity" of the charges he will be called on to meet at any hearing concerning his continued retention of a license.

We concede that it would be unreasonable to expect the town council to inform the licensee of the identity of everyone who would speak at a public hearing and what charges he or she may level. However, we do believe that the licensee should be informed that this type of testimony can be expected at a meeting; and if the town itself plans to present evidence adverse to the licensee's interests, the licensee should be apprised of the situation.

In light of the shortcomings to which we have referred, we feel that it is obvious that the council's denial of the Tillinghast renewal application cannot be upheld.

The petition for certiorari is granted, the council's denial of the Tillinghasts' application is quashed, and the record certified to us is returned to the respondent council with our decision endorsed thereon.