DECISION
Before the Court is an appeal from a June 6, 1995 decision of the Zoning Board of Review of the City of Pawtucket (Board), denying an application of Beverage Hill Realty, LLC and Mannolini Realty, Inc. (together plaintiffs) for a dimensional variance. Jurisdiction is pursuant to G.L. 1991 (1991 Reenactment)45-24-69.
Facts/Travel
Mannolini Realty, Inc. owns the subject property, presently a vacant lot, described as Lot number 402 on Tax Assessor's Plat 38. Said lot is situated in a Manufacturing Open Zone (MO). In a MO Zone, the minimum required lot size is 20,000 square feet with a lot frontage of one hundred feet with setback requirements of twenty feet front, side, and rear. Lot number 402 is 17,250 square feet, 2,750 feet less than required. Mannolini Realty, Inc., together with Beverage Hill Realty, LLC, filed an application with the Board for a dimensional variance with respect to the property.
A hearing was held May 30, 1995 at which Stephen E. Choquette (Choquette), principal of Beverage Hill Realty, LLC, testified as to the need for the variance. Choquette stated that he intends to move his current businesses, Beverage Hill Realty, LLC and Choquette Development Corp., from their present location to the subject property, Choquette characterizing the business as landscaping, construction site work, residential and commercial building.
The plans submitted by the plaintiffs include two buildings. The larger of the two buildings is intended to house the essential equipment of the businesses, including vehicles, as well as an office from which the businesses are run. The smaller building is intended to be used for the retail sale of plant materials and garden supplies. Both buildings would cover approximately one-third of the property, the remaining portion to be used for supply and equipment storage, as well as customer parking.
Also submitted at the hearing was the Advisory Opinion of the Pawtucket Department of Planning and Redevelopment (Department). The Department found that the lot is non-conforming by dimension. Viewing the size and configuration of the lot in conjunction with the minimum area and frontage requirements, the Department found that almost any structure would be in violation of the twenty foot side requirements but that the proposed application would be in agreement with the City's Comprehensive Plan. Accordingly, the Department recommended the Board approve plaintiffs' request for a dimensional variance as the narrow rectangular lot prevents any applicant from building any normal size structure.
At a June 6, 1995 meeting, the Board denied plaintiffs' application for the dimensional variance. Article 9-9(F) (3) of the Pawtucket Zoning Ordinance requires a concurring vote of four of the five sitting board members in favor of a variance before it will grant an applicant's request. In its written decision, however, the Board noted that only three of the Board's members voted in favor of granting the variance. The remaining two members of the Board voted to deny the application, finding that although the proposed use of the land is acceptable and compatible with the area in question, the size and design of the building is against the public interest. The plaintiffs appealed that decision to this Court.
On appeal, plaintiffs present essentially four arguments: (1) the written decision is inconsistent with the record; (2) plaintiffs submitted sufficient evidence to satisfy the requirements of a dimensional variance; (3) the Board's decision is an abuse of discretion not based on the evidence; and, (4) the decision was made on unlawful procedure.
Standard of Review
Superior Court review of a zoning board decision is controlled by G.L. 1956 (1991 Reenactment) § 45-24-69 (D) pursuant to which the court may affirm, reverse or modify the decision of a zoning board if substantial rights of an appellant have been prejudiced because its findings are: in violation of law; in excess of its authority; made upon unlawful procedure or affected by an error of law; clearly erroneous in view of the reliable, substantial evidence in the record; or is arbitrary and capricious or evidences an unwarranted abuse of discretion.
When reviewing a decision of a zoning board, a Justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence. Apostolouv. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981). On review, the Supreme Court examines the record to determine whether "competent evidence" supports the Superior Court judge's decision. R.J.E.P. Associates v. Hellewell, 560 A.2d 353, 354 (R.I. 1989).
Plaintiffs first argue that the Board's decision should be reversed because the written decision is inconsistent with the record. The Board maintains that the decision sets forth definite statements of the Board's findings of fact and therefore, the decision should be affirmed.
It is the obligation of a zoning board of review to decide cases before it so that the content of the decision meets minimal requirements. The board's findings must be factual rather than conclusionary, and the application of the legal principles must be something more than the recital of a litany. The findings should pinpoint the specific evidence upon which such findings are based and disclose the reasons upon which the ultimate decision is based. If the board does not comply with these [directives], they run the risk of reversal. Hopf v. Board ofReview of Newport, 102 R.I. 275, 230 A.2d 420 (1967).
In the instant proceedings, the written decision states that "although the proposed use of the land is acceptable and compatible with the area in question, the dissenting Board members find that the size and design of the building is againstthe public interest." (Emphasis added.) The only references in the record to the size and design of the building, however, regard the two foot setback in the rear of the property and its effect on the means of egress, as well as the drainage system initially proposed by the plaintiffs. Which concerns were addressed by the plaintiffs prior to the June 6, 1995 meeting. Plaintiffs increased the rear setback from two feet to three feet six inches, creating a second legal egress, and agreed to install a new drainage system which would prevent the overflow onto the adjacent property. Moreover, the two dissenting Board members rejected the application not because of the size and design defects, but because the intended business purposes are not permitted:
 "In the findings, use as stated is not a proper use . . . that's the reason why I voted no." Transcript of June 6, 1995 meeting at 17-18.
 "It's a construction company, that is why I am against it, because of the fact that its a construction company and not stipulated by the ordinances." Transcript of June 6, 1995 meeting at 18.
Obviously, the record and the written decision with its findings are clearly inconsistent. The transcript of the June 6, 1995 meeting cites "impermissible use" as the reason for rejection, while the decision speaks of "size and design flaws." As such, the written decision is erroneous as the findings are not supported by substantial evidence of the whole record.
Plaintiffs argue next that the evidence submitted is sufficient to satisfy the requirements of a dimensional variance. Plaintiffs assert that if the setback requirements are followed, any building on the property would have to be eleven feet wide. Moreover, plaintiffs contend that the land is of such a unique contour nothing could be built on the lot that would satisfy the minimum lot size requirement. The Board agrees that a dimensional variance is required for any building erected on the lot. The Board argues, however, that the proposed structure and its location could be altered to conform more fully with the setback requirements, e.g., the building could be moved forward further, increasing the rear setback. The Board further maintains that there is no evidence in the record which would establish that there are no other reasonable alternatives which would allow a legally permitted, beneficial use of the property.
Rhode Island General Laws § 45-24-41 (1991 Reenactment) and Article 9-10(C) of the Pawtucket Zoning Ordinance contain the general provisions for variances from a zoning ordinance. Both provide that when granting a dimensional variance, the Zoning Board of Review shall require that evidence be entered into the record of the proceedings showing that
 "the hardship that will be suffered by the owner of the subject property if the dimensional variance is not granted shall amount to more than a mere inconvenience, which shall mean that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's structure."
In addition, it is the applicant's burden to prove that the proposed structure will not have an "adverse effect upon the public safety, health, welfare, or morale." Bamber v. ZoningBoard of Review, 591 A.2d 1220, 1223 (1991).
In the instant matter, there was unrefuted testimony of record that the peculiar shape of the property and strict dimensional requirements would preclude the construction of almost any building on the lot. At a May 30, 1995 hearing, the Board expressed concerns regarding the proposed two foot setback in the rear of the property and its effect on the means of egress, as well as the drainage system initially proposed by the plaintiffs. Furthermore, there was some question at that hearing as to whether the plaintiffs' intended use of the property is even permitted in this particular area.
With regard to the setback and drainage issues, the record indicates that all the Board's concerns were addressed by the plaintiffs prior to the June 6, 1995 meeting. Plaintiffs increased the rear setback from two feet to three feet six inches. In so doing, plaintiffs created a second legal egress. Furthermore, plaintiffs agreed to install a new drainage system which would prevent the overflow onto the adjacent property. As such, the record demonstrates that any articulated "public interest" concerns were addressed and rectified by the plaintiffs prior to the June 6, 1995 vote.
With regard to the use concerns, Choquette testified the property would be used to house the essential equipment of the businesses, including vehicles, as well as an office from which the businesses are run. The retail sale of plant materials and garden supplies would also be conducted. Plaintiffs provided the Board with several provisions of the Pawtucket Zoning Ordinance which provide that the intended uses are permitted and consistent with the city's plan for a MO zone. Pawtucket Zoning Ordinance Article 1-2(J) states that a MO zone "is intended for light industrial uses that accommodate a variety of manufacturing,assembly, storage of durable goods and related activities." (Emphasis added.) Additionally, plaintiffs cited numerous Use Regulations contained in Article II of the Pawtucket Zoning Ordinance which encompass plaintiffs' various intended business uses:
 Section 2.17 (b) — Storage of equipment, products, supplies and
 materials;
 Section 2.14 (a) — Wholesale Commercial Use, Including the Sale and
 Storage of Goods, Supplies or Equipment;
 Section 2.8 (f) — Business Services; and
 Section 2.4 (c) — Commercial Greenhouse or Nursery

The Board argues that plaintiffs' plans for the retail sale of plant and garden supplies does not qualify as a greenhouse or a nursery as provided for in Section 2.4 (c), "Commercial Greenhouse or Nursery," and is therefore not a permitted use. Although the zoning ordinance does not clearly define the terms "greenhouse" or "nursery," the Board contends that terms of common usage, which arguably do not include the retail sale of plant materials, should apply. Even assuming the retail sale of plant and garden supplies is not covered under Section 2.4 (c), Section 2.8 (f), "Business Services," which encompasses all other related industrial activities, would allow for this intended use.
"It is a well settled principle in this jurisdiction that the rules of statutory construction apply equally to the construction of an ordinance." Mongony v. Bevilacqua, 432 A.2d 661, 663 (R.I. 1981), and cases cited therein. If words of a statute are clear and unambiguous, they must be afforded their plain and ordinary meaning. Ellis v. Rhode Island Public Transportation Authority,586 A.2d 1055 (R.I. 1991). Webster's Dictionary defines "business" as "activity concerned with the supplying anddistributing of commodities." The New Webster EncyclopedicDictionary (1984). "Services" is defined therein as "useful labor that does not produce a tangible commodity." Accordingly, if the distribution or sale of plant and garden supplies does not fall within the plain and ordinary meaning of "Commercial Greenhouse or Nursery," it would fall within the purview of "Business Services" as provided by the plain and clear meaning of the ordinance. Moreover, it is consistent with the economic development plan for this particular area. Therefore, plaintiffs intended use of the property is permitted.
Reviewing the ordinance and all the evidence of record including the Department of Planning's Advisory Opinion, this Court finds plaintiffs have met their burden of showing the intended uses are permitted and in agreement with the city's comprehensive plan for the area. Furthermore, there is sufficient evidence in the record to demonstrate that if the dimensional variance is not granted, the narrow rectangular lot will prevent plaintiffs from building any normal size structure and the hardship suffered will amount to more than a mere inconvenience.
The Court further finds, without the need for extensive discussion, that plaintiffs' third and fourth reasons of appeal are well taken and are in fact subsumed in the Court's prior analysis and determinations. Because this Court has found sufficient evidence to satisfy the requirements of a dimensional variance, the Board's decision to deny the application here constitutes an abuse of discretion. Furthermore, since the Court has also determined that the Board's decision was erroneous, the issue of whether it was made upon unlawful procedure is rendered moot.
Therefore, the Court finds that the Board's decision was clearly erroneous in view of the reliable, probative and substantial evidence of the whole record and that substantial rights of the plaintiffs have been thereby prejudiced. Accordingly, the June 6, 1995 decision of the Zoning Board of Review of the City of Pawtucket is reversed.
Counsel for plaintiff shall submit an appropriate judgment for entry.