DECISION
The plaintiff, Alfred Carpionato (Carpionato), appeals[1]
the Cranston Zoning Board of Review's (board) granting of variances to the defendants, Cedar Crest Nursing Centre Inc. and CC Acquisition Corp. (defendants). Carpionato requests that the board's decision be reversed and that proceedings upon the decision appealed from be stayed. Regrettably, because the board's decision is merely that (essentially just the word "APPROVED") and thus not susceptible of judicial review, the court is constrained to remand this matter to the board so that it might clarify and complete its decision. Furthermore, because Carpionato has followed the board's example by requesting a stay bereft of any supporting rationale for why one ought to issue and on what terms, see G.L. 1956 § 45-24-69 (A) ("[t]he appeal shall not stay proceedings upon the decision appealed from, but the court may, in its discretion, grant a stay on appropriate terms"), his request is denied.
Facts and Procedural History
The defendants applied to the board for dimensional variances to enable them to construct a congregate retirement living facility which would exceed height restrictions and parking lot setback requirements. As an owner of real property within a 400' radius of the property which was the subject of the application, Carpionato received notice of the request and of the scheduled hearing. See The Code of the City of Cranston, 1970, § 30-42(g), as amended. At the hearing, the board heard various experts testify in support of (defendants' experts) and against (Carpionato's experts) the application. Essentially, the expert testimony was conflicting as to whether the application met the required standards. See generally G.L. 1956 § 45-24-41(C) 
(D)(2); The Code of the City of Cranston, 1970, § 30-28(b) 
(c)(2), as amended. After the board heard the testimony and inquired variously of the experts, and without having voted on the application or even discussing the conflicting testimony, the board's chair "declare[d] this public hearing portion of the application closed."
By notice of decision dated the same day of the hearing, the board notified interested property owners such as Carpionato that "THIS APPLICATION WAS APPROVED" (with an appropriate reference to defendants' application). At the bottom of the notice of decision, the board indicated that there was a "FULL WRITTEN DECISION ON FILE" in the board's office. Notwithstanding the notation, no such written decision has been certified to this court by the board. Also on the same day as the hearing, the board prepared a document which reads as follows:
FINDINGS OF FACT
CRANSTON ZONING BOARD OF REVIEW
July 30 1997, Application of Cedar Crest Nursing Home
Pursuant to Article VI of the Zoning Ordinance, the Zoning Board makes the following findings:
1. The hardship from which the applicant seeks relief is due to the unique characteristics of the subject property, and is not due to a physical or economic disability of the applicant.
2. The hardship from which the applicant seeks relief is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain.
3. The granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based.
4. The relief granted is the least relief necessary.
5. The hardship suffered by the owner of the subject property if the dimensional variance is not granted will amount to more than a mere inconvenience.
Thereafter, the aggrieved Carpionato, see G.L. 1956 §45-24-31(4)(b), duly appealed to this court.
The Zoning Board Decision
General Laws § 45-24-61(A) provides that "[following a public hearing, the zoning board of review shall render a decision within a reasonable period of time [and] . . . shall include in its decision all findings of fact and conditions, showing the vote of each member participating thereon, and the absence of a member or his or her failure to vote." See also The Code of the City of Cranston, 1970, § § 30-42(f), as amended, ("[a]ll votes of the board adopting a decision or taking other official action shall be taken at a public meeting"), 30-42(i)(1) ("[t]he board in its decision on any matter coming before it . . . shall record in its minutes the pertinent and material facts and the reasons upon which its decision is based [and] . . . shall render its decision in writing on each application for . . . variance"), and 30-2 ("[t]he word 'shall' is mandatory"). Although certainly rendered promptly, the board's decision is otherwise lacking in content sufficient to facilitate judicial review — "[i]t is conclusional, but not factual; it recites supposed legal principles as justification for what it permits, but does not set out the supporting grounds without which there can be no justification; it utters what purport to be the preconditions to a grant of a variation, but it does not fortify them with the prerequisite findings." Coderre v. Zoning Board of Review of theCity of Pawtucket, 102 R.I. 327, 331, 230 A.2d 247, 249 (1967).
"`It is well settled that `a zoning board of review is required to make findings of fact and conclusions of law in support of its decisions in order that such decisions may be susceptible of judicial review."' Cranston Print Works v. City ofCranston, 684 A.2d 689, 691 (1996). Judicial review of a board's decision is impossible "unless the board . . . ma[kes] factual determinations and applie[s] appropriate legal principles in such a way that a judicial body might reasonably discern the manner in which the board ha[s] resolved evidentiary conflicts." Id. This court will "'neither search the record for supporting evidence nor will [it] . . . decide for [itself] what is proper in the circumstances,"' id. at 692; see also Berg v. City of Warwick,64 R.I. 290, 293, 12 A.2d 225, 226 (1940) ("even though there be a stenographic or otherwise substantial report of the testimony, we do not intend to speculate as to the grounds on which such a board bases its decision"). As observed by our Supreme Court,
 "`The issue here . . . is not one of form, but the content of the decision; and what . . . must [be] decide[d] is whether the board members resolved the evidentiary conflicts, made the prerequisite factual determinations, and applied the proper legal principles. Those findings must, of course, be factual rather than conclusional, and the application of the legal principles must be something more than the recital of a litany. These are minimal requirements. Unless they are satisfied, a judicial review of a board's work is impossible."' Irish Partnership v Rommel, 518 A.2d 356, 358-59 (1986).
These so-called "FINDINGS OF FACT" are but a recitation of the legal conclusions that must be drawn and are embodied in the Code of the City of Cranston, 1970, Sec. 30-28, as amended. As they are devoid of any application of legal principle, the board's decision does not satisfy even these minimal requirements and thus is not subject to judicial review. See generally Hopf v.Board of Review of the City of Newport, 102 R.I. 275, 288,230 A.2d 420, 428 (1967) ("they should disclose the reasons upon which they base their ultimate decision because the parties and this court are entitled to know the reasons for the board's decision in order to avoid speculation, doubt, and unnecessary delay"). Assuming arguendo that the defendants are correct in their unsupported allegation that the board "careful[ly] consider[ed] . . . the evidence," (Brief of Defendants at 7), because the substance of such consideration remains a mystery, the board's decision is fatally flawed; the time when the Court could find "implicit in the board's decision [to grant affirmative relief, a determination that the prerequisite facts exist" having long since passed, see Hopf v. Board of Review ofthe City of Newport, 102 R.I. 275, 289, 230 A.2d 420, 428 (1967).
While it is not the intent of the Court to be "unduly critical of this or any other board," Coderre v. Zoning Board ofReview of the City of Pawtucket, 102 R.I. 327, 332, 230 A.2d 247, 250 (1967), it is too late in the game, see Irish Partnership v.Rommel, 518 A.2d 356, 359 (1986) (noting similar problems of review in "numerous cases before this court whose records were also judged inadequate"), for the Court to overlook these deficiencies, see generally Our Lady of Mercy v. Zoning Board ofReview of the Town of East Greenwich, 102 R.I. 269, 274,229 A.2d 854, 857 (1967); but cf. Zammarelli v. Beattie, 459 A.2d 951, 953 (1983) (court overlooks failure of board to meet the "minimal requirements" for a decision because petitioners had been before the board twice and on both occasions the board neglected or refused to meet such requirements).
For the foregoing reasons, this case is remanded to the board for the preparation of a decision containing findings of fact and conclusions of law, see Our Lady of Mercy v. Zoning Board ofReview of the Town of East Greenwich, 102 R.I. 269, 274,229 A.2d 854, 857 (1967) ("We are now clearly of the opinion that in such cases where the evidence is in conflict, this court should not speculate but rather should remand the record for clarification."), in as expeditious a manner as is reasonable but in no event beyond 60 days after entry of this decision. Cf. The Code of the City of Cranston, 1970, § 30-42 (i)(1). The court notes, however, that if there have been any changes in the composition of the board since the time this matter was initially heard, it will have to be reconsidered by the current board before a proper decision may be rendered, see Bellevue ShoppingCenter Associates v. Chase, 556 A.2d 45, 46 (1989); Thorpe v.Zoning Board of Review of the Town of North Kingstown,492 A.2d 1236, 1237 (1985), in which instance the 60-day time limit will not apply. Jurisdiction of this matter is retained with this Court, and it may be invoked by either party within 30 days after the filing of the decision.
[1] See G.L. 1956 § 45-24-69(A).