DECISION
Before this Court is the appeal of David and Jennifer Clancy (the Clancys) from an April 17, 2005, Decision of the Zoning Board of Review for the Town of Jamestown (Decision and Board respectively), purportedly denying their application for a special use permit. Jurisdiction is pursuant to R.I. Gen. Laws § 45-24-69.
 FACTS AND TRAVEL
The Clancys own property described as Assessor's Plat 7, Lot 22 located at 382 North Road, Jamestown, Rhode Island. The property is located in an RR-200 zone and consists of approximately 65,340 square feet. In addition to residing on the subject property, the Clancys operate a glass-blowing studio located on the lot. Although not pertinent to the special use permit application at issue on this appeal, much of the argument submitted by counsel and the Decision itself centers on the Clancys' construction of the glass-blowing studio. Thus, a brief discussion of the procedural journey the Clancys embarked upon when they sought to construct their studio is necessary.
In April of 2003, the Clancys wished to construct a glass-blowing studio as an accessory structure to their residence on Lot 22. Under § 82-301, Table 3-1 (VII A.4) of the Jamestown Code of Ordinances, a "customary home occupation" is a permitted use in an RR-200 zone. However, due to the size of the proposed structure, the Clancys applied for a dimensional variance in order to construct the studio.[1] The Board conducted a hearing on the application, and on April 23, 2003, it issued a decision granting the Clancys a dimensional variance with certain restrictions. However, within the April 23, 2003, decision, the Board also permitted the Clancys to open their glass-blowing studio to the public on occasion.
When the Clancys opened their newly constructed studio to the public, visitors often asked to purchase a piece of glassware after observing the glass-blowing process. (3/22/05 Tr. 26.) The Clancys had previously sold their glassware on a wholesale level and stated during the hearing on their dimensional variance application that it was not their intent to establish a retail sales operation. However, they began selling glassware to visitors who came to the studio. (3/22/05 Tr. 30, 37.) On February 3, 2005, the Jamestown Zoning Official issued a warning letter to the Clancys, informing them that if retail sales continued on the premises, they would be deemed in violation of the town's zoning ordinance and a violation notice would be issued. (3/22/05 Tr. 14.) Thereafter, the Clancys filed both an appeal from the warning issued by the Zoning Official and an application for a special use permit.
In their appeal from the warning of the Zoning Official, the Clancys claimed that retail sales were permitted under a customary home occupation. They also sought authorization to engage in the "sale of home craft products manufactured on the premises" which is allowed in a RR-200 zone by special use permit pursuant to § 82-301, Table 3-1 (VI. G.11) of the Jamestown Code of Ordinances.
The Board conducted publicly advertised hearings on March 22, 2005, and April 26, 2005. At the March 22, 2005, hearing, the Clancys intended to proceed with their special use permit application. However, the Board determined that, procedurally, the proper order of Board business would be to dispose of the appeal first and then take up the issue of the special use permit. (3/22/05 Tr. 8-10.) Being prepared only to present evidence on the special use permit application, the Clancys withdrew their appeal of the Zoning Official's warning.[2] (3/22/05 Tr. 16.) Therefore, the only matter before the Board was the Clancys' application for a special use permit.
During the hearings, the Clancys presented three witnesses in support of their application. The witnesses included an expert in real estate and zoning matters and a traffic expert, both of whom were cross-examined by members of the Zoning Board. After the Clancys rested, the Board opened up the floor for public comment. Ten individuals spoke in support of the Clancys' application. Another ten individuals spoke in opposition to the application, opining that retail sales would not be compatible with the surrounding agricultural area. The Board issued a written decision on April 27, 2005, denying the Clancys' application. On June 7, 2005, the Clancys timely filed an appeal to this Court.
 STANDARD OF REVIEW
The standard of review for the Superior Court's appellate consideration of a zoning board's decision is governed by R.I. Gen. Laws § 45-24-69 (d), which states:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions; (2) In excess of the authority granted to the zoning board of review by statute or ordinance; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
The reviewing court gives deference to the decision of the zoning board, the members of which are presumed to have special knowledge of the rules related to the administration of zoning ordinances. SeeMonforte v. Zoning Bd. of Review of East Providence, 93 R.I. 447, 449,176 A.2d 726, 728 (1962); see also Braun v. Zoning Bd. of Review ofSouth Kingstown, 99 R.I. 105, 109 206 A.2d 96, 98-99 (1965). This deference, however, must not rise to the level of "blind allegiance."Citizens Savings Bank v. Bell, 605 F. Supp. 1033, 1042 (D. R.I. 1985). The court conducts a de novo review of questions of law. von Bernuth v.Zoning Bd. of Review, 770 A.2d 396, 399 (R.I. 2001). Thus, this court may remand the case for further proceedings or vacate the decision of the zoning board if it is "clearly erroneous in view of the reliable, probative and substantial evidence of the whole record" or otherwise affected by legal error. Id.
 ANALYSIS
The thrust of the Clancys' argument on appeal is that the Board's decision was arbitrary and capricious and, therefore, should be reversed. Conversely, the Board contends that the Clancys failed to meet the requisite burden of proof for granting a special use permit under the zoning ordinance and, accordingly, this Court should defer to its judgment. However, after thorough review of the Decision and record, this Court finds that the Board never properly ruled on the merits of the Clancys' application for a special use permit.
The Legislature has mandated that "[t]he zoning board of review shall include in its decision all findings of fact and conditions. . . ."See R.I. Gen. Laws § 45-24-61 (a).[3] In addition, our Supreme Court has stated on many occasions that "a municipal board, when acting in a quasi-judicial capacity, must set forth in its decision findings of fact and reasons for the action taken." Sciacca v. Caruso, 769 A.2d 578, 585
(R.I. 2001) (citing Irish Partnership v. Rommel, 518 A.2d 356, 358
(R.I. 1986)). Reviewing courts have been cautioned not to speculate as to the grounds the zoning board relied upon if such reasons and evidence supporting those reasons are not revealed in the zoning board's decision. See Hopf v. Bd. of Review of the City of Newport,102 R.I. 275, 289, 230 A.2d 420, 428 (1967). As the Supreme Court has explained:
 "The issue here . . . is not one of form, but the content of the decision; and what we must decide is whether the board members resolved the evidentiary conflicts, made the prerequisite factual determinations, and applied the proper legal principles. Those findings must, of course, be factual rather than conclusional, and the application of the legal principles must be something more than the recital of a litany. These are minimal requirements. Unless they are satisfied, a judicial review of a board's work is impossible."
Irish Partnership, 518 A.2d at 359 (emphasis added).
As previously noted, the "sale of home craft products manufactured on the premises" is specifically allowed in a RR-200 zone by special use permit pursuant to § 82-301, Table 3-1 (VI. G.11). The Jamestown Code of Ordinances expressly authorizes the zoning board to issue special use permits for such retail purposes in appropriate circumstances.See § 82-601. More specifically, the applicable legal standard that the Board is required to consider and make findings upon when deciding whether to issue a special use permit is found in § 82-602, which provides:
 "Before any special use permit shall be granted, the applicant shall show to the satisfaction of the zoning board:
 A. That the granting of the special use permit will not result in conditions inimical to the public health, safety, morals and welfare; and
 B. That the granting of such special use permit will not substantially or permanently injure the appropriate use of the property in the surrounding area or district."
By its very terms, the zoning ordinance requires an applicant for a special use permit to satisfy the criteria set forth in both § 82-602 (A) and (B). However, it is indiscernible from the Decision whether this standard was applied properly to the Clancys' application. The relevant portions of the Decision state:
 "23. The applicants are before the Board seeking a special use permit the language of which is contained in Article 6, Section [sic] 601 and 602.
 . . . .
 25. Article 3, Section 302, District Dimensional Regulations, Section VI (G) (11) permits the sale of home crafts [sic] products manufactured on the premises by special use permit. Accordingly, the first issue presented is to determine what constitutes a home crafted manufactured product.
 26. Our first consideration is to determine the nature of products produced as a result of activity that is classified as a customary home occupation, the classification attributed by the applicants to their activity in their first application for relief filed on 3/24/03.
 . . . .
 29. The next step in this analysis is to make reference to Article 3, District Dimensional Regulations, which shall be met for all uses of land permitted under the Jamestown ordinance. In that article consideration is directed to the particular use being made of land in conjunction to the district in which the property is located. A review of this article clearly shows that the RR200 zone is primarily an agricultural area — reference is made to Section 302 Use III.
 30. Article 3, Section 302, Category VII (A) (4) states that customary home occupations are permitted uses in an RR200 zone; however, customary home occupations are identified in that section as a subcategory of Commercial Services, and Professional offices. There are no activities listed in the section that even remotely resemble the stated activities of the present application, production of glassware.
 31. Conversely, category VIII lists industrial activities and [Article] IX lists industrial and manufacturing activities. A review of those functions more closely resemble [sic] the activities of the applicants; however, with the exception of storage or transfer of fishery equipment, all industrial or manufacturing activity are not permitted in an RR200 zone. Accordingly, the relief needed by the applicant [sic] should be a variance, not a special use permit."
Decision of April 27, 2005 at 3-5 (emphasis added).
Despite the Board's determination that the proper relief for the Clancys to pursue would be a variance, the Board concludes its Decision as follows:
 "I. That the production of glassware as performed by the applicant does not constitute a customary home occupation as defined in the ordinance. . . .
 . . . .
 III. That judged as an application for a special use permit . . .; the applicant [sic] has failed to sustain their burden of proof."[4]
Id. at 5.
As the cited portions of the Decision indicate, it is impossible to decipher what form of relief the Board was ruling on and whether the appropriate legal standard was applied. The record makes it clear that the Clancys were applying for a special use permit for the sale of home craft products manufactured on the premises, a fact the Board unquestionably acknowledged in its Decision. However, paragraph 31 of the Decision concludes that the Clancys sought the improper form of relief by stating that the Clancys should have sought a variance, not a special use permit.
It is undisputed that the Clancys' lot is situated in a RR-200 zone. Pursuant to the express terms of the ordinance previously referenced, the "sale of home craft products manufactured on the premises" is specifically allowed in a RR-200 zone by special use permit. Thus, not only is the Board's conclusion with respect to the proper form of relief erroneous, but in view of the Board's error of law, it is also unclear whether the Board's analysis pertained to the issuance of a special use permit or a variance.
Additionally, it is unclear from the cryptic references to the ordinance sections concerning customary home occupations if the Board was addressing the issue of whether glass-blowing constitutes as a customary home occupation or whether the Clancys were entitled to a special use permit. Regardless of the determination reached in the challenged Decision, the Board was acutely aware that the Clancys planned to operate a glass-blowing studio when it granted them the dimensional variance in April of 2003. However, in the instant application, the Clancys were seeking a special use permit to engage in the sale of glassware manufactured in their studio, not for a permit to engage in glass-blowing. Therefore, the discussion of whether glass-blowing constitutes a customary home occupation is not only irrelevant, but it also makes judicial review of the Board's ruling on the merits of the Clancys application for a special use permit impossible.
Furthermore, even if this Court were to assume that the Board did specifically address the Clancys' application for a special use permit, it still remains unclear whether the proper burden of proof as provided for under § 82-602 (A) and (B) of the ordinance was applied. For example, it is not clear how or why the Board's citations to and discussion of the sections of code pertaining to a customary home occupation are relevant to the issuance of the special use permit. Clearly, § 82-602 (A) and (B) make no reference to any other sections of the ordinance.
 CONCLUSION
In conclusion, the lack of clarity in the Board's decision leaves this Court unconvinced that the proper legal principles were applied to the Clancys' application. Accordingly, this Court remands to the Board its April 27, 2005, Decision with specific instructions to rule on the merits of the Clancys' application for a special use permit utilizing the criteria enumerated in § 82-602 (A) and (B). This Justice shall retain jurisdiction.
[1] More specifically, the Clancys sought to build a 900 square foot accessory structure to contain their glass-blowing studio. However, § 82-103 (29), which defines "customary home occupation," limits the space that may be used for such an activity to 200 square feet. Additionally, § 82-311 limits the size of an accessory structure to 600 square feet.
[2] The following exchange took place between Attorney Bardorf for the Clancys and the Board Member Ginnerty:
 "Mr. Bardorf: I can't say it's voluntary withdrawal of the appeal. I'm left withoutoptions because I have experts here tonight who want to put on testimony for the special use permit, so I want to proceed with the special use permit, and the board has made itclear I can't proceed with the special use permit unless I withdraw the appeal.
 Mr. Ginnerty: That's what you said. You should proceed with the appeal. If you wish toproceed on the appeal at any time, you should proceed now. So, you should either waiveit or withdraw.
 Mr. Bardorf: Withdrawing our appeal."
(3/22/05 Tr. 16.)
[3] A similar requirement can also be found the Zoning Enabling Act, which states that each ordinance shall "[p]rovide for the recording of findings of fact and written decisions." See § 45-24-42 (b)(5).
[4] The Decision went on to state:
 "In particular, the applicants have presented no probative evidence that the relief sought would not result in a substantial health and safety problem relating to traffic operation at the North Road location. . . , the speed of traffic in the area would result in danger to drivers confronted with slowing, turning and stopping vehicles. That visibility is limited by the road contour since the subject property is located near the crest of the hill. That street parking is unavailable due to the road conditions, a single lane of travel in each direction, unstable dirt shoulder to each side of the road, and the area is poorly lighted.
 Further, the granting of this application would substantially and permanently injure the appropriate use of the property in the surrounding area. That area, as well as the subject property, is designated as RR200, wherein permitted activities are primarily traditional agricultural pursuits.
 That granting of the relief sought would not be in keeping with the general purposes of the zoning ordinance or the comprehensive plan, in particular that a retail sales operation of any sort would be detrimental to the rural character of the area and contrary to the economic development plan. . . ."
Id. at 5-6.