[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Appellants Jean B. Vitali and Eddy Carvalho seek relief from a November 19, 2004 decision of the Central Falls Zoning Board of Review (hereinafter "Board"), denying their request for a dimensional variance. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 FACTS AND TRAVEL
The property at issue in this matter is a vacant lot located at 23-27 Samoset Avenue, Central Falls, Rhode Island, (also known as Tax Assessor's Plat 2, Lot 101), which is owned by Appellant Vitali. The property is located in zone R-1. An R-1 zone is "intended for low density residential areas comprising single dwelling unit detached structures located on lots with a minimum land area of 5,000 sq. ft." Central Falls, R.I., Rev. Ordinances app. A (2004) (hereinafter "Ordinance") at § 101.1. Appellant Vitali's property has a land area of 4500 square feet.
Appellant Vitali entered into a conditional sales agreement for the property with Appellant Carvalho. Appellant Carvalho seeks to build a single family detached residence on the property which meets all of the dimensional requirements of the zoning ordinance except for the minimum land area requirement of 5,000 square feet. See Ordinance at § 401.
On October 8, 2004, Appellants applied for a dimensional variance pursuant to § 908.3(A) of the Ordinance. Ordinance at § 908.3(A). The Appellants requested relief on the grounds that they were suffering a hardship due to the unique characteristics of the property at issue, namely that the lot was undersized, and said hardship was preventing Appellants from realizing the full, beneficial use of the property. (Compl., Ex. A, 3.)
An advertised hearing took place on November 18, 2004. At the hearing, Frank Milos, Esq. represented Appellants. Mr. Milos called Appellant Carvalho and Mr. Coyle, a real estate expert, to testify on behalf of granting the variance. Once the meeting was open for public comments, several residents of the neighborhood where the property is located spoke both for and against granting the variance, though all voiced concerns about the density and parking issues of the neighborhood. In addition, Arthur Hanson, the Director of the Department of Planning and Economic Development for the City of Central Falls, spoke in favor of granting the variance. He stated that he believed the proposed residence would be a positive addition to the neighborhood, since single-family homes are generally well-maintained and this particular proposal addresses the density and parking problems in the areas. (Tr. at 65-67.) Todd Olbrych, the zoning officer for the City who reviewed the initial application for a variance, also spoke in favor of granting the variance, echoing the same comments as Mr. Hanson. (Tr. at 73-75.) A letter from City Councilman Jay Ledger urging that the variance be denied was read into the record. He noted that the neighborhood was "a condensed area which would be made worse by an additional house in a very small lot." (Tr. at 78.) Lastly, Mr. Cooney, counsel for the City of Central Falls, voiced concern about potential legal consequences of denying the variance, namely, that the Board would inversely condemn the property if it denied the variance, but he did not register a formal opinion either for or against granting the variance. The Board voted three to two to deny the application. Appellants filed this timely appeal on November 30, 2004.
 STANDARD OF REVIEW
The Superior Court review of a zoning board decision is controlled by G.L. 1956 (1991 Reenactment) § 45-24-69(D), which provides:
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing a decision of a zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence. Apostolou v. Genovesi, 120 R.I. 501,507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount, more than a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co. Inc., 424 A.2d 646, 647 (R.I. 1981) (citing Apostolou,120 R.I. at 507, 388 A.2d 824-825). The reviewing court "examines the record below to determine whether competent evidence exists to support the tribunal's findings." New England Naturist Ass'n, Inc. v. George,648 A.2d 370, 371 (R.I. 1994) (citing Town of Narragansett v.International Association of Fire Fighters, AFL-CIO, Local 1589,119 R.I. 506, 380 A.2d 521 (1977)).
However, this Court's deferential standard of review is contingent upon the zoning board's providing adequate findings of facts to support its decision. Kaveny v. Town of Cumberland Zoning Board of Review, No. 2003-318-A., slip op. at 10 (R.I., filed June 13, 2005). Factual findings, which are not merely conclusory statements or a "recital of a litany," are necessary to conduct judicial review of the Board's decision. Von Bernuth v. Zoning Board of Review of New Shoreham,770 A.2d 396, 401 (R.I. 2001) (quoting Irish Partnership v. Rommel,518 A.2d 356, 358 (R.I. 1986)). If a zoning board does not provide factual findings, the court will not search the record to ascertain a basis for the board's decision or to decide for itself the proper outcome. Von Bernuth, 770 A.2d at 401. However, if a zoning board neglects its duty to provide factual findings and the record contains no evidence supporting the zoning board's decision, the court will reverse the zoning board's decision. Sciacca v. Caruso, 769 A.2d 578, 585 (R.I. 2001).
 THE ZONING BOARD DECISION
The Appellants set forth six grounds for appeal in their complaint. (Compl. at 2.) However, Appellants neglect to address in their supporting memorandum the claims that the Board acted in excess of its authority and that Appellant's due process and equal protection rights were violated. "Simply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue." Kaveny, No. 2003-318-A., slip op. at 13 (quoting Wilkinson v. State Crime Laboratory Commission, 788 A.2d 1129,1131 n. 1 (R.I. 2002)). Therefore, this Court will consider only the grounds in the Complaint that were briefed by Appellants.
The Appellants assert that the Board's decision is not supported by the reliable, probative and substantial evidence on the whole record, and therefore, the decision to deny the dimensional variance is clearly erroneous and an abuse of discretion. In addition, Appellants argue that the factual findings of the Board are inadequate to support its decision. The Appellees contend that the Board's decision was based upon the substantial evidence in the record because Appellants failed to meet their burden of showing that the proposed residential dwelling would not contradict the purposes and goals of the city's Comprehensive Plan.
 STANDARD FOR GRANTING A DIMENSIONAL VARIANCE
The standard for granting a dimensional variance is set forth in section 908.3 of the Ordinance.
 "In granting a variance, the board shall require that evidence to the satisfaction of the following standards be entered into the record of the proceedings:
 (1) that the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and not due to a physical or economic disability of the applicant;
 (2) that said hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) that the granting of the requested variance will not alter the general characteristic of the surrounding area or impair the intent or purpose of this Zoning Ordinance or the Comprehensive Plan of the City.
 (4) that the relief to be granted is the least relief necessary.
 The Board shall, in addition to the above standards, require that evidence entered into the record of the proceedings showing that:
. . .
 (2) in granting a dimensional variance, that the hardship that will be suffered by the owner of the subject property if the dimensional variance is not granted shall amount to more than a mere inconvenience, which shall mean that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted shall not be grounds for relief." Ordinance at § 908.3 (emphasis added).
This standard for granting a variance is identical to that provided in the Zoning Enabling Act, except in one important aspect. The language defining "more than a mere inconvenience" as "no other reasonable alternative to enjoy a legally permitted beneficial use of one's property" has been removed from the statute. G.L. 1956 §45-24-41(d)(2) (2004) ("[I]n granting a dimensional variance, that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience."). This change in the statutory language reinstated the less stringent Viti Doctrine, which requires that the applicant for a dimensional variance show only that if the variance is denied the applicant will suffer an adverse impact amounting to more than an inconvenience.Lischio v. Zoning Bd. of Review, 818 A.2d 685, 691
(2003); Viti v. Zoning Board of Review of Providence,92 R.I. 59, 64-65, 166 A.2d 211, 213 (1960). The Zoning Enabling Act requires that all zoning ordinances be in conformity with its provisions. G.L. 1956 § 45-24-28(a) (2004). Therefore, Appellants need only show that they would suffer a hardship amounting to more than an inconvenience.
In addition, when an applicant is applying for a dimensional variance, the requirement that the variance will not change the general characteristics of the area or damage the principles of the zoning ordinance or the comprehensive plan is of limited importance. Lischio,818 A.2d at 693; G.L. § 45-24-41(c)(3) (zoning board and trial court improperly focused on the use of the property and not the extent of the dimensional relief sought in finding the proposed building would alter the general character of the area); Ordinance at 908.3(3). Our Supreme Court reasoned in Lischio that when deciding whether to grant a dimensional variance, the focus should not be on the use of the proposed building, since it has already been determined that the use is appropriate. Lischio, 818 A.2d at 694.
 THE BOARD'S FINDINGS OF FACT
At the outset, the Appellants argue that the factual findings of the Board are inadequate to support its decision. The record reflects that the Board was mindful of the need to provide adequate factual findings, as the Chairman of the Board repeatedly reminded the Board members of the need to provide reasons for their decision. (Tr. at 17, 72-73.)
The Board's decision states the following findings of fact:
 "The applicant is proposing to build a single family home on a 4,500 sq. ft. parcel of land located in an R-1 Zone.
 The applicant's request conflicts with the City of Central Falls State Certified Comprehensive Community Plans [sic] objectives for reducing dwelling density, restricting the overbuilding of land and the taxing of services on the City." (Compl., Ex. B.)
Based on these findings of fact, the Board concluded that "[a]fter due consideration of the application, the testimony of the witnesses and the entire record presented to the Zoning Board of Review, the Board makes the following decision . . . The Zoning Board of Review voted 3 to 2 to deny the applicant's request." (Compl., Ex. B.)
Adequate factual findings are a necessary prerequisite for judicial review. In its findings, a zoning board "should pinpoint the specific evidence upon which they base such findings. Additionally they should disclose the reasons upon which they base their ultimate decision because the parties and this court are entitled to know the reasons for the board's decision in order to avoid speculation, doubt, and unnecessary delay." Hopf v. Board of Review, 102 R.I. 275, 288, 230 A.2d 420, 428
(1967) (citing Bastedo v. Board of Review, 89 R.I. 420, 153 A.2d 531
(1959); Coffin v. Zoning Board of Review, 81 R.I. 112, 98 A.2d 843
(1953); Winters v. Zoning Board of Review, 80 R.I. 275, 96 A.2d 337
(1953); Petrarca v. Zoning Board of Review, 78 R.I. 130, 80 A.2d 156
(1951)). See also von Bernuth 770 A.2d at 396; Sciacca, 769 A.2d at 578. If a zoning board provides inadequate findings of fact, it runs the risk of reversal or remand for clarification. Hopf, 230 A.2d at 428.
Here, the Board sets forth two findings of fact. The second finding states that the variance would conflict with the Comprehensive Plan. However, a statement that granting a variance would contradict the Comprehensive Plan is more in the nature of a legal conclusion than a finding of fact. Kaveny, No. 2003-318-A., slip op. at 6 (vacated and remanded a zoning board's decision to deny a variance because the board's finding was conclusional and unsupported by findings of fact). Moreover, conclusory boilerplate recitations do not suffice as findings of fact.See Irish Partnership, 518 A.2d at 358-359; Hopf, 102 R.I. at 288,230 A.2d at 428. The Board specifically points to the reasons why granting the proposed variance would conflict with the Comprehensive Plan; namely, it would defeat the objectives of reducing residential density, restricting the overbuilding of land, and the taxing of services on the City. However, these reasons are also conclusory, as they are not supported by specific factual findings.
The first finding of fact — that the lot is 4,500 square feet and in a R-1 zone — does provide some evidentiary support for why granting the variance would conflict with the Comprehensive Plan's goals. However, that fact alone is not adequate to deny a variance when the variance is needed precisely because the lot is undersized. See von Bernuth,770 A.2d 396 (granting a dimensional variance from lot size restrictions). In fact, the Zoning Enabling Act protects undersized lots that were in existence prior to the passage of the Act and allows for such lots to be used for beneficial purposes notwithstanding their nonconformance. G.L. 1956 § 45-24-38 (2004). Furthermore, the Act requires cities to enact variance provisions so that such legal lots of record are protected (G.L. 1956 § 45-24-39 (2004)), and Central Falls complies with this requirement (Ordinance at § 908). Moreover, the Ordinance states that all of its provisions are in compliance with the Comprehensive Plan. Ordinance at § 100. Therefore, the mere fact that the subject lot is undersized is not an adequate factual basis for finding that granting a variance would contravene the Comprehensive Plan, since the zoning ordinance, in conformity with the Comprehensive Plan, allows for undersized lots to be developed. Thus the Board acted in violation of statutory provisions, in rendering said decision unsupported by adequate findings.
Moreover, the reliable, probative and substantial evidence in the record does not support the finding than an undersized lot would even contravene the objectives of the Comprehensive Plan. The Board stated in its findings of fact that "[t]he applicant's request conflicts with the City of Central Falls State Certified Comprehensive Community Plans [sic] objectives for reducing dwelling density, restricting the overbuilding of land and the taxing of services on the City." Arthur Hanson, the Director of the Department of Planning and Economic Development for the City of Central Falls, testified that the plan for the proposed residential structure was in conformity with the "spirit" of the Comprehensive Plan's goal of reducing residential density. (Tr. at 68.) In addition, Todd Olbrych, the zoning officer, testified that, in his estimation, a lot coverage restriction is a mechanism for controlling density, and that here the lot coverage requirement is satisfied. (Tr. at 74.)
The only testimony in the record that remotely supports the Board's finding that granting the variance would contravene the city's Comprehensive Plan is that of the neighboring landowners. The landowners voiced their concerns about putting a house on such a small lot, indicating that it would result in houses being densely packed. (Tr. at 47, 58-59.) However, the lay opinions of neighbors on matters that require expert knowledge, such as whether the proposed residence would illegally encroach on its neighbors' property, do not have the probative force to outweigh the expert evidence provided to the contrary. SeeToohey v. Kilday, 415 A.2d 732, 737 (R.I. 1980). Moreover, it is uncontroverted in the record that Appellants' proposed residence meets all other dimensional requirements other than the minimum lot size of 5,000 square feet. Therefore, the proposed residence would be no closer to its neighbors than would be allowed if the lot were 500 square feet larger and no dimensional variance were needed. Thus, the record reflects that the proposed residence, having the same lot coverage and setbacks as required of all conforming uses in the R-1 zone, will not contribute to the problem of overcrowding more than what a residence on a lot 5,000 square feet or larger with the same lot coverage and setbacks would contribute.
Since the Ordinance states that all of its provisions are in conformity with the Comprehensive Plan (Ordinance at § 100), it cannot follow that granting the dimensional variance would contravene the Comprehensive Plan's goal of reducing density when the zoning ordinance allows homes to be built, albeit on slightly larger lots, that contribute to overcrowding just as much. Therefore, while the density concerns of the neighboring landowners may be valid, they are best addressed through a petition to the City Council to change the zoning ordinance to further restrict development of undersized lots (insofar as the Zoning Enabling Act will allow) and not through the denying of an application for a dimensional variance. See Verdecchia v. Johnston Town Council, 589 A.2d 830 (R.I. 1991) (amendments to a zoning ordinance are a legislative function); G.L. 1956 § 45-24-50 (2004) (town council has the power to amend the town's zoning ordinance to promote the public welfare).
 CONCLUSION
After a review of the entire record, this Court finds the decision of the Board is arbitrary and not supported by the reliable, probative, and substantial evidence of record. Substantial rights of the Appellants have been prejudiced. Accordingly, the decision of the Board is reversed.