[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is an appeal from a decision of the Cranston Zoning Board of Review (Appellee or Board). Appellant David Cloxton (Appellant or Cloxton) seeks reversal of the Board's denial of his application for relief from the conditions imposed on a portion of the property in question pursuant to a variance granted in 1981. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 FACTS AND TRAVEL
The subject lots are identified as Assessor's Plat 15/1, Lot 900 and Lot 668 in Cranston. The lots are located in an A-8 zoning district, which requires a minimum of 8,000 square feet in order to build. Lot 900 is a small, approximately 5,300 square foot vacant lot owned by Cloxton, while Lot 668 is owned by the Woodhaven Condominium Association (Woodhaven). The northern portion of Lot 668 is the portion of that lot in question in this case.
Cloxton and Woodhaven signed a purchase and sale agreement whereby Woodhaven agreed to sell approximately 26,162 square feet of Lot 668, which after the sale would contain approximately 5.71 acres. The total land area of both Lot 900 and Lot 668 is approximately 5.84 acres. It was Cloxton's plan to merge this 26,162 square foot portion with Lot 900, which he already owns, and then divide the new parcel into two lots. These two newly created lots would contain approximately 17,499 square feet and 12,963 square feet, and be used for single family residential dwellings.
Lot 668 contains forty-eight (48) condominium units housed in eleven (11) buildings on over 5.5 acres of land. The northern portion, which Cloxton seeks to purchase, is undeveloped and natural. In 1981, a variance was granted to allow the development of the condominiums, subject to several conditions. The conditions included a limitation of forty-eight condominium units, a forty foot natural buffer zone along Mayfield Avenue, no access to Chase Street, a forty foot natural strip along the westerly and northerly side of the property, and installation of drainage system and holding ponds.
Cloxton sought preliminary Planning Commission approval of his proposal prior to seeking zoning relief. The Planning Commission found that the dwelling unit density at Woodhaven was significantly larger than neighboring condominium communities, even after the proposed change to the lot.[1] The Planning Commission then issued preliminary approval for the proposed subdivision, and recommended favorable action to the Zoning Board.
The Board then held a public hearing on August 11, 2004, during which several people testified. Cloxton explained the details of the proposal and stated that the only relief sought was to reduce the size of the Woodhaven lot and transfer the northernmost portion of the parcel to Cloxton, thereby reducing an existing forty foot natural barrier. The natural forty foot buffer was established in 1981 as a condition of the grant of a variance when the Woodhaven condominiums were being developed. A land surveyor who was working with Cloxton and who had worked on the initial Woodhaven condominium development project also testified in support of the application. One neighbor testified in favor of the proposal, stating that his conversation with Cloxton regarding the proposal dispelled any concerns he had. Another neighbor objected via a letter, which was read into the record, and stated that she was concerned about flooding and thought that conditions imposed in 1981 were valid and should not be eliminated. Dorothy Horan, the President of the Woodhaven Condo Association, testified in support of the proposal, but did admit to some flooding problems on a portion of the Woodhaven lot.
The Board voted 3-2 in favor of the application; however, under §45-24-57(2)(iii), four affirmative votes are required in order to approve the application. Appellant's application received three affirmative votes, and was therefore denied as a matter of law. Appellant thereafter timely filed this appeal.
 STANDARD OF REVIEW
The Superior Court's review of a zoning board decision is governed by § 45-24-69(d), which provides that:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, a justice of the Superior Court may "not substitute [his or her] judgment for that of the zoning board if [he or she] conscientiously find[s] that the board's decision was supported by substantial evidence." Apostolou v. Genovesi,120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence . . . means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Bd. of Reviewof North Kingstown, 818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswellv. George Sherman Sand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981)). Thus, the "reviewing court examines the record below to determine whether competent evidence exists to support the [Board's decision]." New England Naturist Assoc., Inc. v. George, 648 A.2d 370, 371
(R.I. 1994) (citing Town of Narragansett v. Int'l Assoc. of FireFighters, AFL-CIO, Local 1589, 119 R.I. 506, 380 A.2d 521 (1977)).
 THE BOARD'S DECISION
Appellant argues that the Board's denial of Appellant's application was in excess of its authority. Appellant suggests that the Board exceeded its authority by viewing the application as one for relief from the 1981 conditions rather than one for dimensional relief to reduce the lot area of the Woodhaven property. According to Appellant, the Board also used the wrong standard of review, applying an undefined changed circumstances standard of review in reaching its decision. Appellant also contends that the Board's decision was arbitrary and erroneous in light of the Board's findings of fact and the evidence presented during the hearing. Additionally, Appellant argues that no evidence supports the votes against his application, yet the Board voted to deny it.
The Board argues that it had jurisdiction to hear Cloxton's application and did not exceed its statutory jurisdiction in so doing. The Board contends that it possesses the power to modify conditions imposed with respect to the grant of a variance under § 45-24-57(1)(viii), which grants the Board power "to hear and decide other matters."[2] The Board concedes that under § 45-24-57, it does not expressly have the power to lift conditions previously imposed; however, the Board suggests that such a power is implicit. According to the Board, Appellant's request for relief from conditions did not comport with either a true dimensional variance or a true use variance. Additionally, the Board contends that its decision was not arbitrary, or clearly erroneous, and the vote of the zoning board was legal and in accordance with § 45-24-57(2)(iii), which requires concurrence of four of the five members to grant relief.
Ordinarily, zoning board decisions are veiled in a cloak of finality and cannot be reopened, rescinded, altered, or reviewed, except by the courts. 4 Arden H. Rathkopf, The Law of Zoning and Planning, § 68:3 (2005). However, "[g]ood cause may exist for refusal to strictly apply this finality doctrine." 4 Arden H. Rathkopf, The Law of Zoning andPlanning, § 68:7 (2005) (citations omitted). It is well-settled that:
 "Courts generally hold that a new application for administrative relief or development permission may be considered by a board if there is a substantial change in (1) the proposed use or the plans for the use; (2) the circumstances or the conditions relevant to the application; or (3) a combination of these factors. Changes justifying a new application must be substantial and relate to issues involving the relief requested." Id. (citing numerous cases nationwide).
Our Supreme Court has held that "boards of review have authority to reverse a prior decision but that authority is limited." AvakianFuneral Home, Inc. v. Zoning Bd. of Review of City of Providence,100 R.I. 439, 441, 216 A.2d 704, 705 (1966). "The power to reverse an earlier determination, however, is a qualified one and is not to be exercised unless there has been a substantial or material change in circumstances intervening between the two decisions." Id.; see also Hopfv. Bd. of Review of City of Newport, 102 R.I. 275, 282-83, 230 A.2d 420,425 (1967) (exploring board's authority to alter conditions imposed in prior grant); Marks v. Zoning Bd. of Review of City of Providence,98 R.I 405, 203 A.2d 761 (1964) (affirming substantial or material change in circumstances standard). Administrative finality and res judicata bar consideration of subsequent applications for identical relief. See Hopf,102 R.I. at 282-83, 230 A.2d at 425. In this case, however, there is not a second, identical application. Additionally, "the principle of res judicata [does] not bar the lifting of conditions imposed on the prior grant of a variance upon a proper showing of changed circumstances or other good cause." 4 Arden H. Rathkopf, The Law of Zoning and Planning,
§ 68:11 (2005) (citation omitted). Our Supreme Court has held that it "will not allow a land owner, through the simple expedient of allowing a special exception [or variance] to lapse, to evade conditions previously imposed without showing a change in circumstances to warrant departure from a prior administrative order." Audette v. Coletti, 539 A.2d 520, 522
(R.I. 1988). The burden of proof in showing changed circumstances lies with the applicant. Marks v. Zoning Bd. of Review of City of Providence,98 R.I 405, 203 A.2d 761 (1964); see also 4 Arden H. Rathkopf, The Law ofZoning and Planning, § 68:14 (2005).
In this case, Appellant applied for relief to the Board after receiving preliminary approval from the Planning Board. The actual application form used was one for a variance or special exception and on it, relief from the applicable variance sections was requested. At the Board's hearing, however, Appellant's attorney stated that they were "seeking relief from the restrictions that were placed on this [property] in 1981. . . ." (Tr. at 8.) Appellant's attorney continued, stating that he was not "sure it's a variance that's needed. I think basically we need permission from this board to give some relief to the restriction that is placed on the variance." (Tr. at 12.)
Here, there may have been some confusion as to exactly the type of relief sought; however, the Board treated the application for a variance as an application for relief from conditions placed on the property in conjunction with a 1981 variance. The Board did, in fact, treat the application as one "for relief from the [1981] restrictions, nos. 1, 3, and 4, as opposed to an application for a dimensional, or use variance." (Bd. Minutes at 6.) This Court finds the Board's treatment of the application did not violate statutory or ordinance provisions. See Carrollv. Zoning Bd. of Review of City of Providence, 104 R.I. 676, 682,248 A.2d 321, 325 (1968) (considering application as one for variance rather than application for variance or exception); Staller v. CranstonZoning Bd. of Review, 100 R.I. 340, 341, 215 A.2d 418, 419 (1965) (holding use of incorrect ordinance provision on printed form application allowed consideration as application for relief under proper provision);Reynolds v. Zoning Bd. of Review of Town of Lincoln, 96 R.I. 340,191 A.2d 350 (1963) (expounding parties' incorrect treatment of matter as application for variance did not deprive board of jurisdiction).
Although conditions attached to prior variances may be modified or removed by a zoning board if there has been a "substantial or material change in circumstances," the burden is on the applicant to prove such a change. Hopf, 102 R.I. at 282-83, 230 A.2d at 425; Marks, 98 R.I 405,203 A.2d 761. In this case, the Board was required to determine whether there had indeed been a "substantial or material change in circumstances" or whether there was good cause to modify or remove the conditions from the 1981 variance. At the hearing before the Board, there was discussion of the condition requiring a forty foot buffer zone on the northern and western portions of the Woodhaven property. The Appellant, as applicant, however, was required to prove to the Board that there had, in fact, been a material change in circumstances that would warrant relief from the condition.
The Supreme Court has examined a material change in circumstances:
 "What constitutes a material change will depend on the context of the particular administrative scheme and the relief sought by the applicant and should be determined with reference to the statutes, regulations, and case law that govern the specific field. The changed circumstances could be internal to the application, as when an applicant seeks the same relief but makes important changes in the application to address the concerns expressed in the denial of its earlier application. Or, external circumstances could have changed, as when an applicant for a zoning exception demonstrates that the essential nature of land use in the immediate vicinity has changed since the previous application. Finally, there is a burden on the administrative decision-maker to articulate in its decision the specific materially changed circumstances that warrant . . . [action on] the relief sought." Johnston Ambulatory Surgical Assocs. v. Nolan, 755 A.2d 799, 811 (R.I. 2000).
In its memorandum, the Board argues that Appellant failed to carry his burden of proof. There is no evidence in the record of an external change, such as a change in the "essential nature of land use," or other circumstance. The Board's written decision states that some members of the Board found no material change in circumstances, while others did find some material changes. In its minutes, the Board made the following findings of fact:
 "(a) the property is located in a Residential A-8 District . . . (b) the Planning Commission has approved the Preliminary Subdivision; (c) the two proposed houses meet all of the requirements for an A-8 District; (d) the [Woodhaven] condos received a variance in 1981 for construction, subject to certain restrictions, as follows, (1) 48 units only . . . (2) 40 ft. natural buffer zone along Mayfield Avenue, (3) no access to Chase Street, (4) 40 ft. natural strip along westerly and entirely [sic] northerly side, (5) install a drainage system and holding ponds; (e) the proposed lots will have frontage of 115.87 ft.; (f) Rosewood Condominiums density = 3,849 sq. ft. per unit, Willow Crest density = 3,510 sq. ft. per unit, Woodhaven existing density = 5,819 sq. ft. per unit, Proposed density = 4,543 sq. ft. per unit; (g) the applicant presented the testimony of an architect in support of the application, who testified that notwithstanding the proposed houses, a buffer would still remain; (h) two individuals testified in support of the application; (i) the Planning Commission unanimously voted to recommend approval of the application, with the notation that the proposed density was still less than the other two existing condominium complexes across Mayfield Avenue." (Bd. Minutes at 6.)
However, the Board was presented with evidence which supports a denial of the application. The two Board members who voted against the application did have an evidentiary basis for doing so based on this Court's review of the record. At the hearing a letter submitted by a neighbor was read into the record. Said letter raised the issue of flooding in the area, stating, "[b]ecause of the way the street runs down, we get a lot of water build up." (Tr. at 21.) Additionally, the discussion of the purpose of the buffer yielded debate, but the land surveyor testified that the "buffer was to shield [the] homes from the condominium project." (Tr. at 14.) This evidence could reasonably lead to a Board member voting to deny the application, as two members did in this case. It is well-settled that "the court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact." § 45-24-69; see also Mill RealtyAssocs. v. Crowe, 841 A.2d 668, 672 (R.I. 2004). Based on the evidence in the record, this Court finds that the Board's denial of the application is not clearly erroneous or in excess of its statutory authority.
Ultimately, the Board denied the application because the application did not receive the requisite four votes to pass under § 45-24-57(2). As this Court has stated, the Board had the power to "hear and decide other matters" under § 45-24-57(1)(viii). Section 45-24-57(2)(iii) provides that "[t]he concurring vote of four (4) of the five (5) members of the zoning board of review sitting at a hearing are required to decide in favor of an applicant on any matter within the discretion of the board . . . under the ordinance. . . ." Additionally, Section 30-42(j) of the Code of the City of Cranston provides that "the concurring vote of four of the five members shall be required to decide in favor of an applicant on any matter concerning special exceptions, special permit uses or variances. . . ." Here the board is presumed to have made the appropriate findings and applied the correct standards in reaching its conclusion. See Wyss v. Zoning Bd. of Review of City ofWarwick, 99 R.I. 562, 565, 209 A.2d 225, 227 (1965).
 CONCLUSION
After review of the entire record, this Court finds that the decision of the Board was not clearly erroneous in view of the reliable, probative, and substantial evidence of record, or in excess of its authority. Substantial rights of the Appellant have not been prejudiced. Accordingly, this Court hereby affirms the Board's decision.
Counsel shall submit an appropriate order consistent with this opinion.
[1] The Planning Commission found that the densities at neighboring Rosewood and Willowcrest condominium communities were 3,843 and 3,510 square feet respectively, while the density at Woodhaven was 5,189 square feet as it existed and 4,585 square feet after the proposed subdivision.
[2] The Jamestown Code of Ordinances § 82-501 mirrors the language of § 45-24-57.