DECISION
Before the Court is Appellant Lisa Notarantonio's ("Appellant") appeal from the North Providence Zoning Board of Review's ("Board") February 8, 2005 decision. The Board granted a dimensional variance to Appellee Quantum Builders Developers, LLC ("Quantum") to construct a three-unit residence upon its undersized property. Appellant contends that Quantum failed to satisfy the requisite criteria for a dimensional variance and that the Board failed to make sufficient findings of fact. Jurisdiction is pursuant to G.L. 1956 § 45-24-69. For the reasons set forth below, this Court vacates the Board's decision and remands the matter to the Board for further findings of fact.
 Facts and Travel
Quantum is the owner of real property located at 1505 Douglas Avenue, North Providence, Rhode Island, also identified as Assessor's Lot 848, Plat 22 ("Property"). The Property is approximately 18,100-18,400 square feet in size, and is located in a Residential General Zone ("RG Zone"). Multi-family housing is a permitted use within an RG Zone, provided that the property has a minimum land area of 20,000 square feet. (North Providence Zoning Ordinance §§ 201A(4), 204.)
Currently situated upon the property is a single-family residence. Quantum wishes to remove this structure and construct in its place a three-unit condominium.[1] As the Property fails to satisfy the minimum dimensional requirements for multi-unit housing, Quantum filed for a dimensional variance with the Town of North Providence Zoning Board of Review on October 27, 2004. Hearings on the application were held on November 18, 2004; December 16, 2004; and January 20, 2005. At those hearings, evidence and testimony were presented both for and against the application.
In support of its requested relief, Quantum elicited the testimony of several experts favoring Quantum's proposal. Ronald Kershaw, a professional engineer, discussed the property's drainage and testified that he did not foresee any problems. (Tr. 11/18/04 at 36; Tr. 12/16/0 at 27.) Real Estate Expert William G. Floriani stated that the section of the town where the Property is located is developing into multi-family and that Quantum's proposal would be an enhancement to the town. (Tr. 11/18/04 at 39-40.) Floriani also opined that he did not believe that the proposed use would alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or comprehensive plan. Id. at 41. Furthermore, Joseph McCue from Natural Resource Services testified regarding the application Quantum would need to submit to DEM, but stated that the proposed development would have no adverse effect on the nearby river and wetlands. (Tr. 12/16/04 at 32.)
In rebuttal, several individuals spoke against Quantum's application. One abutting neighbor expressed his belief that Quantum would not be more than merely inconvenienced if the variance was denied, as Quantum could still use the Property for a single-family structure. (Tr. 11/18/04 at 45.) That same neighbor also testified that the proposed structure would substantially burden and alter the character of the neighborhood.Id. at 46. Peter M. Scotti, an expert in real estate appraisal, expressed a similar sentiment, testifying that while there were some multi-unit structures in the area, the area is predominantly single-family. Id. at 48, 50. According to Scotti, constructing a three or four-unit structure on the Property would be inconsistent with the comprehensive plan. Additionally, other neighbors vocalized their various concerns, including one neighbor who was uncertain as to the impact the variance would have on her easement, and another expressing concern over flooding and inadequate parking. (Tr. 11/18/04 at 52; Tr. 12/16/04 at 38-39.)
Beyond this testimony, the Board also was provided with several documents. Included in this material was the Town of North Providence Planning Board's recommendation that a three-unit building could conform to the comprehensive plan, but that a structure with more than three units would not comport with the comprehensive plan. The Board also had for consideration several photographs of the area along with the blueprints and sketches of Quantum's proposed structure.
At the January 20, 2005 hearing, a motion to approve Quantum's variance was passed by the Board. In making the motion, one Board member explained:
 "I think the, it should be granted, that the use will be in harmony with the general purpose and intent of the comprehensive plan, I think the granting will serve the general public convenience and welfare, that it will not result in any conditions that will be inimical to public health, safety, morals or the general welfare. So for those reasons, I think I would like to grant this." (Tr. 1/20/05 at 10-11.)
The Board issued a written decision on February 8, 2005, granting Quantum permission to construct a three-unit residence. On February 25, 2005, the Appellant timely filed an appeal to this Court for review.
 Standard of Review
The standard of review for the Superior Court's appellate consideration of a zoning board's decision is governed by §45-24-69 (D), which states:
 "The Court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
"The Superior Court reviews the decisions of a plan commission or board of review under the `traditional judicial review' standard applicable to administrative agency actions." Restivo v. Lynch,707 A.2d 663, 665 (R.I. 1998). When reviewing a zoning board decision, the Superior Court "lacks [the] authority to weigh the evidence, to pass upon the credibility of witnesses, or to substitute his or her findings of fact for those made at the administrative level." Id. at 665-66 (quoting Lett v.Caromile, 510 A.2d 958, 960 (R.I. 1986)). The Court must examine the entire record to determine whether substantial evidence exists to support the board's decision. Salve Regina College v.Zoning Bd. of Review, 594 A.2d 878, 880 (R.I. 1991). "`Substantial evidence . . . means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla, but less than a preponderance.'" Lischio v. Zoning Bd. of Review, 818 A.2d 685,690 n. 5 (R.I. 2003) (quoting Caswell v. George Sherman Sand andGravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981)). If the zoning board's decision is affected with legal error, though, the Court must reverse said decision. Harmel Corp. v. Zoning Bd. ofReview, 603 A.2d 303, 305 (R.I. 1992).
 The Board's Decision
Appellant contends that the Board's decision is arbitrary and capricious and therefore should be reversed. According to the Appellant, the Board failed to make the necessary findings of fact to warrant approval of Quantum's application for a dimensional variance. After thorough review of the Board's decision, this Court finds that the Board did fail to make the requisite findings of fact necessary for judicial review.
The Supreme Court of Rhode Island has held that the Court will not speculate as to the grounds the zoning board relied upon if such reasons and evidence supporting those reasons are not revealed in the zoning board's decision. Hopf v. Bd. of Reviewof the City of Newport, 102 R.I. 275, 289, 230 A.2d 420, 428
(1967). If the board fails to state findings of fact, "`the courtwill not search the record for supporting evidence or decide for itself what is proper in the circumstances." (Emphasis added.) Bernuth v. Zoning Bd. of Review of the Town of NewShoreham, 770 A.2d 396, 410 (R.I. 2001) (quoting IrishPartnership v. Rommel, 518 A.2d 356, 359 (R.I. 1986)). Therefore, the Court, on review, will examine the board's decision, and if sufficient findings of fact have not been made, the Court will not examine the record even if sufficient evidence within the record would support the board's decision. Id. at 358 ("Thus even if the applicants did present sufficient evidence to support a finding that no other reasonable alternative existed whereby a legally permitted beneficial use of the property was possible, the zoning board's decision was conclusional and failed to apply the proper legal principles, thereby making judicial review of the board's work impossible.") See also, Kaveny v.Town of Cumberland Zoning Bd. of Review, 875 A.2d 1, 8 (R.I. 2005) ("when the zoning board fails to state findings of fact, the Court will not search the record for supporting evidence or decide for itself what is proper in the circumstances." (quotingIrish Partnership, 518 A.2d at 359)); Zammarelli v. Beattie,459 A.2d 951, 953 (R.I. 1983) (Judicial review is impossible if board does not make minimum findings).
While it is therefore clear that the Court requires adequate information in a zoning board's decision before it will begin to examine the record, a mere recitation of facts is insufficient.[2] The Supreme Court of Rhode Island has held that "a municipal board, when acting in a quasi-judicial capacity, must set forth in its decision findings of fact and reasons for the action taken." Irish Partnership,518 A.2d at 358 (citations omitted). What is required is "the making of findings of fact and the application of legal principles in such manner that a judicial body might review a decision with a reasonable understanding of the manner in which evidentiary conflicts have been resolved and the provisions of the . . . ordinance applied." Thorpe v. Zoning Bd. or Review of NorthKingstown, 492 A.2d 1236, 1237 (R.I. 1985). "Findings made by a zoning board `must of course, be factual rather than conclusional, and the application of the legal principles must be something more than a recital of litany.'" Sciacca v. Caruso,769 A.2d 578, 585 (R.I. 2001) (quoting Irish Partnership,518 A.2d at 358). Such findings have been held necessary to facilitate judicial review, avoid judicial usurpation of the board's functions, help parties plan their cases for judicial review, and to assure more careful consideration by the board.Hooper v. Goldstein, 104 R.I. 32, 44, 241 A.2d 809, 815 (1968).
The applicable legal standards that the Board was required to consider and make findings upon here, when deciding whether to issue the dimensional variance, are found in North Providence Zoning Ordinance § 503, which provides:
 "A. In granting a variance, the Board of review requires that evidence to the satisfaction of the following standards be entered into the record of the proceedings:
 (1) that the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not the general characteristics of the surrounding area; and not due to a physical or economic disability of the applicant;
 (2) that said hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) that the granting of the requested variance will not alter the general characteristic of the surrounding area or impair the intent or purpose of this Ordinance or the Comprehensive Plan of the Town; and
 (4) that the relief to be granted is the least relief necessary.
 B. The Board shall in addition to the above standards, require that evidence be entered into the record of the proceedings showing that: . . .
 (2) in granting a dimensional variance, that the hardship that will be suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience, which shall mean that there is no other reasonable alternative to enjoy a legally permitted beneficial use of the owner's property. . . ."[3]
By its very terms, this ordinance requires an Applicant for a dimensional variance to satisfy the criteria in both § 503 A and B. Likewise, the Court has gone out of its way to advise zoning boards to make certain that their decisions expressly address each of the above criteria. In Sciacca, the Court issued the following warning:
 "We take this opportunity, however, to caution zoning boards and their attorneys to make certain that zoning board decisions on variance applications (whether use or dimensional) address the evidence in the record before the board that either meets or fails to satisfy each of the legal preconditions for granting such relief, as set forth in § 45-24-41(c) and (d) [or as it applies here § 503 A and B]."
After review of the Board's decision, this Court finds that the Board failed to make sufficient findings and conclusions applying the facts to the conditions of § 503 A and B. In its decision the Board made the following findings of fact:
 "1. The subject property is located at 1505 Douglas Avenue and known as Assessor's Plat 22, Lot No. 848, containing approximately 18,400 square feet more or less, Residence General Limited Zone.
 2. The applicant is requesting permission to demolish the existing structure and construct a four (4) unit residence,
 3. The applicant requests a Variance on the District Dimensional Regulations.
 4. The applicant amends his application to request permission to construct a three (3) unit residence.
As to the Variance requested:
 1. The Board was of the opinion that to grant the Special Use Permit for the three (3) units requested would be in harmony with the general purpose of our ordinance and comprehensive plan.
 2. The Board was of the opinion that the use requested would not create conditions inimical to public health, safety or welfare, and would not injure the surrounding area."
While the Board did briefly discuss the size of the property and Quantum's application, and while it did make a finding that the proposal was consistent with the comprehensive plan, the Board failed explicitly to address the remaining requisite conditions in Ordinance § 503 A and B. For instance, the Board made no finding as to whether the hardship results primarily from Quantum's desire to achieve greater financial gain or whether the dimensional variance was the least relief necessary. Furthermore, the Board did not even address whether Quantum would be more than merely inconvenienced if it was not granted its requested dimensional relief, as is required by § 503 B(2). When the Board fails to make those requisite findings, this Court will not look to the record, even if substantial evidence in the record would support the Board's ultimate conclusion. Kaveny, 875 A.2d at 8. As the Court in Bernuth explained, after the zoning board similarly failed to make the requisite findings:
 "We cannot determine what evidence that was presented to the zoning board persuaded it that the requirement of § 42-24-41(d)(2) had been met. Indeed, there is no evidence that the zoning board considered or applied the statutory requirement, given that the statute is not acknowledged in the zoning board's decision. Thus, even if the applicants did present sufficient evidence to support a finding that no other reasonable alternative existed whereby a legally permitted beneficial use of the property was possible, the zoning board's decision was conclusional and failed to apply the proper legal principles, thereby making judicial review of the board's work impossible." Bernuth, 770 A.2d at 402
(citing Irish Partnership, 518 A.2d at 358).
Likewise, the Board here failed to address the requisite criteria of Ordinance § 503, which Quantum had the burden to satisfy. Instead, the Board made its conclusion by applying the criteria for a special-use permit.[4] Quantum, however, applied for a dimensional variance; thus, it was an error of law to use the conditions for a special-use permit, and accordingly, the Board's decision must be vacated.[5] This Court will not speculate if sufficient evidence supports the granting of a dimensional variance as the Board made no findings applying the criteria for a dimensional variance. Accordingly, this matter must be remanded to the Board so that it may make further findings of fact, addressing whether Quantum satisfied the conditions of Ordinance § 503.[6] If there have been any changes in the composition of the Board since the matter was originally heard, it will have to be reconsidered by the current Board before a proper decision may be rendered. BellevueShopping Center Assocs. v. Chase, 556 A.2d 45, 46 (R.I. 1989). On remand, the Board is confined to the record and Quantum is not permitted to present additional evidence as it had ample opportunity to do so at the three hearings before the Board.
 Conclusion
When granting Quantum its requested dimensional variance, the Board failed to make sufficient findings of fact and erroneously applied the standards for a special use permit as opposed to the standards for a dimensional variance. This Court will not look to the record when the Board fails to state findings of fact addressing each of the requisite conditions of law for a dimensional variance. Therefore, this matter is remanded to the Board, so that it may make further findings of fact consistent with this opinion. Counsel shall confer and agree upon an appropriate form of order and judgment, reflective of this decision, and submit it to the Court forthwith for entry. Jurisdiction shall be retained by the Court.
[1] Quantum originally applied for a variance to construct a four-family residence. At the December 16, 2004 hearing, though, Quantum amended its application, and requested a variance for a three-unit residence. (Tr. 12/16/04 at 8.)
[2] In earlier cases, the Supreme Court of Rhode Island often overlooked infirmities in a zoning board's findings of fact and would look to the record to determine for itself if sufficient evidence supported the board's conclusion. See Cuguni v.Chiaradio, 96 R.I. 120, 127, 189 A.2d 798, 802 (1963); Morin v.Zoning Bd. of Review of the City of Warwick, 89 R.I. 406, 412, 153 A.2d 149,152 (1959); Winters v. Zoning Bd. of Review of theCity of Warwick, 80 R.I. 275, 277, 96 A.2d 337, 339 (1953). However, the Supreme Court of Rhode Island, while not expressly overruling the above cases, later held that the preferred approach is to require adequate findings of fact before the Court will examine the record:
 "In the second line of cases, in order to avoid speculation, we held that a decision granting or denying relief which fails (1) to give the reasons and the ground or grounds upon which it is predicated and (2) to point out the evidence on which the ultimate finding or findings are based will be returned to the board for completion and clarification. We believe the rule stated in the later cases is the better rule . . . We apply this rule to the case at bar and, in the future, to all cases where the evidence is in conflict." Hopf, 102 R.I. at 289-90, 230 A.2d at 428-29.
[3] This language is nearly identical to the language in G.L. 1956 § 45-24-41(c) and (d). The one glaring difference is that §45-24-41(d) no longer defines "more than a mere inconvenience" as requiring the applicant to have no other reasonable alternative use of his or her property. This difference, though, is inconsequential to this Court's analysis here, because no matter how "more than a mere inconvenience is defined," the Board failed to address how Quantum was "more than merely inconvenienced" in its decision.
[4] North Providence Zoning Ordinance § 505 provides that the Board my not grant a special use permit unless it makes the following findings of fact:
 "A. That the use will comply with all applicable requirements as set forth in Article V and Article II or elsewhere in this Ordinance.
 B. That the use will be in harmony with the general purpose and intent of this Ordinance and the Comprehensive Plan of the Town of North Providence.
 C. That the granting of the special use permit will substantially serve the public convenience and welfare.
 D. That the use will not result in or create conditions inimical to the public health, safety, morals, and general welfare.
 E. That it will not substantially or permanently injure the appropriate use of surrounding property."
In its decision, the Board made findings that the conditions in § 505 had been satisfied. However, those conditions are distinct from those an applicant is required to demonstrate for a dimensional variance, the particular type of relief sought by Quantum. Thus, the Board applied the incorrect standard to Quantum's application.
[5] This Court repeats the advice that has often been espoused by the Supreme Court of Rhode Island:
 "Finally, we point out that it would be difficult to sustain the board's decision in any event in view of the inadequate record kept by it and also because of the inadequacy of the statement summarizing its decision. It might be appropriate to suggest again that, because of the complicated legal questions incident to all zoning hearings, zoning boards should avail themselves of the legal service of their municipal legal departments. This would, in our judgment, aid the boards in the administration of justice to all who come before them." Sciacca, 769 A.2d at 585-86 (quoting Souza v. Zoning Bd. of Review of Warren, 104 R.I. 697, 699-700, 248 A.2d 325, 327 (1968).
[6] Remand is appropriate where there is a "genuine defect in the proceedings in the first instance, which was not the fault of the party seeking remand, or upon the fact that there is no record of proceedings upon which a reviewing court may act."Roger Williams College v. Gallison, 572 A.2d 61, 63 (R.I. 1990). In this matter, there were no defects in the proceeding which were the fault of either of the parties; rather it was the Board's failure to apply the appropriate criteria to its findings of fact that warrants remand of the case.