DECISION
Lizette J. Cortijo ("Appellant") brings this appeal from a decision of the Central Falls Zoning Board of Review ("the Board"), denying her application for a dimensional zoning variance. The Appellant seeks a variance from the dimensional lot area regulations mandated by the City of Central Falls Zoning Ordinance ("the Ordinance") for the addition of a third apartment in an existing two-family home. The Court has jurisdiction pursuant to G.L. 1956 § 45-24-69. For the reasons set forth below, the Court remands this matter to the Board for further findings of fact and conclusions of law.
 I. Facts and Travel
Appellant owns a two-family house located at 13-15 Mary Street, Central Falls, Rhode Island known as Assessor's Plat 5, Lot 370 ("the property"). (Zoning Board Decision; see also Tr. 3, 5.) The property is zoned residential R-3, and consists of approximately 5000 square feet. (Zoning Board Decision; see also Tr. 8-9.) In an R-3 zone in the City of Central Falls ("the City"), *Page 2 
a minimum lot area of 5000 square feet is required. (Ordinance, art. IV, § 401.) However, the Ordinance also requires 2000 square feet per dwelling unit. Id.
Appellant would like to add a third dwelling unit to her already existing two-family home. (Zoning Board Decision; see also Tr. 4.) However, if she were to add a third dwelling unit, her property would be undersized by 1000 square feet as she would need 6000 square feet of property to satisfy the 2000 square-foot per dwelling unit ordinance requirement. Consequently, in order to satisfy the Ordinance and convert the property into a three-family home, Appellant must obtain dimensional relief of 1000 square feet. (Tr. 8-9.)
On April 15, 2003, Appellant filed an application with the Board, seeking a dimensional variance from the lot size requirement pursuant to art. IX, § 908.39(A) of the Ordinance. A properly advertised public hearing was conducted on the matter on January 29, 2004. (Tr. 1.).[1]
The Appellant testified in support of her application. She testified that "practically all" of the houses on her "block" were three-family dwellings. (Tr. 10.) She stated, however, that she has used the property as a two-family home since she purchased it in 2000. She resides on the first floor with her husband and son. (Tr. 6-7.) The third floor of the three story building is presently unoccupied, but contains "rough plumbing and . . . a bathtub." The Appellant testified that "if properly finished," it "absolutely" could be rented as a separate dwelling unit. (Tr. 7.) The Appellant testified that she intends to use the third dwelling unit as an apartment for her son and his girlfriend, and that she was not seeking the variance for monetary gain. (Tr. 11-13.) She then *Page 3 
assured the Board that the property met all of the Ordinance's dimensional requirements as they relate to parking, frontage, setbacks, lot coverage, and height requirements. (Tr. 14.)
Appellant presented expert testimony from real estate appraiser William Coyle ("Coyle"). Coyle testified that Appellant met all of the statutory requirements for a dimensional variance. He stated that 93% of the lots in the neighborhood are below 6000 square feet, but yet "the bulk of the houses . . . are all three families." (Tr. 38.) He testified that 5000 square foot lots constitute "the most popular lot [size] in the whole City." (Tr. 39). Coyle opined that due to the nature of the neighborhood — mostly already three-family — the renovation of the already existing third floor on the property would not, in his opinion, alter the general character of the surrounding area or adversely affect the marketability of neighborhood property. (Tr. 40). Indeed, he speculated that "nobody would ever know the difference because it's exactly the same as the house right next door, on the other side."Id. Coyle further testified that the 1000 square foot variance would not adversely affect the health, safety, and welfare of the community, and that it was the least relief necessary. (Tr. 41.) He then testified that denial of Appellant's application would be a hardship amounting to more than a mere inconvenience. Id.
Next to testify was abutting neighbor and objector, Bob Guindon (Guindon). (Tr. 50.) Guindon expressed concern with regard to parking in the neighborhood, due, in part, to a lack of enforcement of parking laws. (Tr. 51.) Mr. Guindon also alleged that Appellant's proposed third unit would add to the City's population density problems, and that the increase in population would adversely affect the existing population in the form of higher taxes needed to pay for an increase in public services. (Tr. 53.) He further stated that by granting of the variance, the Board *Page 4 
"could be opening up a can of worms . . . because if this is granted, there's no stopping anybody else from coming before you looking for that same exception." (Tr. 53-54.)
George Dumont, in his capacity as Code Enforcement Director and Zoning Official (Dumont), testified in opposition to the application. He challenged Appellant's contention that denial of the application would be a hardship amounting to more than a mere inconvenience. He stated that "[t]he applicant knowingly purchased a two-family home and is now claiming a hardship . . . [,]" but that in his opinion, the Appellant created her own hardship. (Tr. 60.) Dumont then discussed how the additional unit would contribute to existing congestion in the area and, therefore, would conflict with the City's "long range comprehensive goal of decreasing density and promoting the public health, safety, and general welfare of its citizens, period." (Tr. 63.)
Dumont then read the City Planning Department's recommendation into the record. (Tr. 63.) It stated:
 "The Department of Planning is recommending denial of this applicant's request based on the findings of the Zoning Officer, that there is no hardship in this case, and that the granting of the request would contribute to an already congested area and be in conflict with the City of Central Falls Comprehensive Community Plan, period." Id.
Dumont also raised concerns about the location and configuration of the proposed parking spaces, and how they might impact pedestrian and fire safety. (Tr. 63-65.)
At the conclusion of the hearing and without any discussion, the Board voted unanimously to deny the application. (Tr. 73-74.) Thereafter, on March 29, 2004, the Board issued its written decision. In the decision's findings of facts, the Board found that "[t]he *Page 5 
exhibits filed with the board are hereby made part of this decision and are incorporated by reference." (Zoning Board Decision.) However, according to the record, "no exhibits were offered at this hearing." (Tr. 2.) The decision then concluded that the Board had denied the application "[a]fter due consideration of the application, the testimony of the witnesses and the entire Record presented to the board. . . ."Id. Appellant took a timely appeal from the Board's decision.
 II. Standard of Review
The Superior Court's review of a zoning board decision is governed by § 45-24-69(d). Section § 45-24-69(d) provides:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
As a fundamental rule, "[t]he Superior Court reviews the decisions of a plan commission or board of review under the `traditional judicial review' standard applicable to administrative *Page 6 
agency actions." Restivo v. Lynch, 707 A.2d 663, 665 (R.I. 1998). When reviewing a zoning board decision, the Superior Court "lacks [the] authority to weigh the evidence, to pass upon the credibility of witnesses, or to substitute [its] findings of fact for those made at the administrative level." Id. (quoting Lett v. Caromile, 510 A.2d 958, 960(R.I. 1986)). The Court "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings."DeStefano v. Zoning Bd. of Review of Warwick, 122 R.I. 241, 245,405 A.2d 1167, 1170 (1979).
The term, "substantial evidence," has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Bd. of Review of North Kingstown,818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswell v. George Sherman Sand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981)). A decision lacking competent evidence, containing merely conclusional or insufficient evidence, warrants reversal and remand to the zoning board. von Bernuthv. Zoning Bd. of Review of New Shoreham, 770 A.2d 396, 401-02 (R.I. 2001) (remanding decision based on lack of competent evidence);Hopf v. Bd. of Review of City of Newport, 102 R.I. 275, 230 A.2d 420
(1967) (reversing zoning board decision due to conclusional or insufficient evidence).
 III The Zoning Board's Decision
Section 45-24-41 of the Rhode Island Zoning Enabling Act and the Ordinance, art. IX, § 908.3(A) set forth the legal standards governing a Board's consideration of an application for a dimensional variance. In the instant matter, the language in the Ordinance and that of § 45-24-41 *Page 7 
differ slightly, and therefore the language of the statute supercedes and is controlling.[2] Sciacca v. Caruso, 769 A.2d 578, 582-583 (R.I. 2001) (provisions allowing municipalities to grant variances superceded by § 45-24-41); see also § 45-24-28(a) ("Any zoning ordinance or amendment of the ordinance . . . shall conform to the provisions of this chapter"); Costal Recycling, Inc. v. Connors, 854 A.2d 711, 715 (R.I. 2004) ("A state statute preempts municipal ordinances when either the language in the ordinance contradicts the language the language in the statute or when the Legislature has intended to `thoroughly occupy the field'").
Section 45-24-41(c) provides:
 "In granting a variance, the zoning board of review requires that evidence to the satisfaction of the following standards is entered into the record of the proceedings:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in § 45-24-30(16);
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary." Section 45-24-41(c) (emphasis added).
In addition, § 45-24-41(d) of the State Zoning Enabling Act provides that a board shall, *Page 8 
 "require that evidence is entered into the record of the proceedings showing that: . . . (2) in granting a dimensional variance, that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted is not grounds for relief." Section 45-24-41(d) (emphasis added).
Zoning board decisions expressly should address each of the criteria of § 45-24-41. See Sciacca, 769 A.2d at 585. In Sciacca, our Supreme Court "caution[ed] zoning boards and their attorneys to make certain that zoning board decisions on variance applications (whether use or dimensional) address the evidence in the record before the board that either meets or fails to satisfy each of the legal preconditions for granting such relief, as set forth in § 45-24-41(c) and (d)."Id. A Court's deference to a zoning board decision is conditional upon a board's providing adequate findings of fact that support its decision.See Kaveny v. Town of Cumberland Zoning Bd. of Review, 875 A.2d 1, 8
(R.I. 2005). Factual findings, amounting to more than mere conclusory statements or a "recital of a litany," are necessary to accomplish judicial review of a zoning board decision. von Bernuth, 770 A.2d at 401
(quoting Irish P'ship v. Rommel, 518 A.2d 356, 358 (R.I. 1986)). A Court must uphold a zoning board decision when it is supported by substantial evidence contained in the record. Hein v. Town of Foster Zoning Bd.Of Review, 632 A.2d 643, 646 (R.I. 1993). However, conclusional or insufficient evidence warrants the reversal of a zoning board's decision. Hopf, 102 R.I. 275, 230 A.2d 420 (1967). In fact, when the record and decision are devoid of findings of fact, or when findings of fact are judged to be inadequate, judicial review becomes impossible.Kaveny, 875 A.2d at 8.
In the instant matter, the "Findings of Facts" contained in Board's decision simply state that: "[t]he exhibits filed with the board are hereby made a part of this decision and are incorporated herein by reference." (Zoning Board Decision.) These "Findings of Facts" are *Page 9 
wholly inadequate given the mandates of § 45-24-41(c) and (d).See Irish P'ship, 518 A.2d at 358 (holding that the findings of fact "must, of course, be factual rather than conclusional, and the application of legal principles must be something more than a recital of a litany").
Furthermore, even if it were appropriate to deem as factual findings exhibits that were filed in the record, a review of the instant record reveals that, in fact, no exhibits ever were filed. SeeKaveny, 875 A.2d at 8 (stating that the Court "will not search the record for supporting evidence"); von Bernuth, 770 A.2d at 401
(observing that "[w]hen the board fails to state findings of fact, the court will not search the record for supporting evidence or decide for itself what is proper in the circumstances").
The Court finds that the Board's decision contained insufficient and inadequate findings of facts, resulting in an unsupported denial of the petition. The Court further finds that this insufficiency and inadequacy of factual findings preclude the Court from meaningfully reviewing the Board's decision. Consequently, the Court must remand the case to the Board for adequate factual findings and conclusions of law. Furthermore, in light of this decision, the Court need not address the merits of the appeal.
 Conclusion
After a review of the entire record, the Court finds that the Board acted in violation of ordinance provisions and in excess of its statutory authority in rendering a decision lacking adequate findings of fact and conclusions of law. Accordingly, the Court remands the case for further findings of fact and conclusions of law.
Counsel shall submit an appropriate order consistent with this opinion.
[1] The January 29, 2004 hearing was the second time the matter appeared before the Board. The matter was originally heard by the Board on May 22, 2003, when the Board denied the application. Appellant appealed the decision, and the matter was remanded to the Board because a portion of the May 22, 2003 transcript was lost by the City. The matter was remanded for a de novo hearing before the Board. (Appellant's Mem. 2 n. 2.)
[2] The language of the Ordinance, designed to mirror § 45-24-41, continues to define "more than a mere inconvenience" as meaning, "that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property." (Ordinance, art. Ix, § 908.3.) The General Assembly amended § 45-24-41 in 2002, removing that definition and reinstating the less-burdensome standard of simply "more than a mere inconvenience." Lischio v. Zoning Bd. of Review of North Kingstown,818 A.2d 685, 690-91 (R.I. 2003). The City, apparently, has yet to amend the Ordinance to comport with § 45-24-41. *Page 1